Oct. 1840.

The Mayor
and Common
Council of
the city of
Rochester
v.
Curtiss.

## THE MAYOR AND COMMON COUNCIL of the city of Rochester *vs.* CURTISS.

A preliminary injunction will be allowed to prevent a nuisance, where the right is clear—the consequent danger immediate, and the mischief irreparable, but not when the right is doubtful, and the danger remote and contingent.

Preliminary injunctions are allowed to prevent immediate injury, and remote and contingent damage.

The City of Rochester was the official guardian of a bridge over the Genesee river; the east abutment of which projected so far into the river as to narrow the channel of the river. They filed a bill to prevent the owner of land, next up stream, from rebuilding a wall projecting only so far into the rive as the east abutment of the bridge, and sloping landward so as to give a favorable passage of the water of the river under the arch of the bridge, and asked for an injunction restraining the erection of such wall.—Held that the danger from the erection of the wall was nothing as long as the abutment of the bridge was continued, and that no injunction should be allowed as long the city continued their own obstruction by the abutment.— That there was no immediate additional danger from the erection of the wall which would justify a preliminary injunction.

Preliminary injunctions may be allowed to prevent intrusions upon property dedicated to the public, as to restrain the erection of a building upon a public square or street; but the act declaring the Genesee river a highway, only applies to that river above the rapids, and was for the purpose of preserving its navigation free, and is not applicable to the rapids where the river is not navigable.

ON filing bill in this cause an order was granted for the defendant to show cause why an injunction should not issue pursuant to the prayer of the bill. The bill and affidavits, on either side, present substantially the following case : The common council of the city of Rochester are *ex officio* commissioners of highways; they are charged with the duty of keeping the Genesee river clear of drift wood and other obstructions. The Genesee river, by act of

April 2, 1813, is declared to be a public highway from the great falls to the Canasuaga creek. The Genesee river runs through the city of Rochester, and is crossed by bridges and particularly by a bridge connecting Main with Buffalo street, which was erected at great expense, and is highly important to the public. At this point the banks on the west side are or were low, so as to be liable to wash away by the floods, and on the east side precipitous and rocky. Formerly, the largest part of the water of the river ran near the east bank where the channel was the deepest, but it has been partly filled up by mills and other erections, and the west bank has wore away but is now protected by artificial erections. The channel of the river, at this bridge for the flow of water, is now much narrower than either above or below, and so much so that the water cannot be safely discharged in high freshets. That two freshets occur yearly which give rise to fears of great and extensive damage, by reason of the narrowness of the apertures for the discharge of the water at this bridge. The east abutment of the bridge projects considerably into the river and is made of solid masonry. Immediately south of and adjoining to this east abutment, and the south side of Main street, the defendant owns a lot, bounded upon the river, upon which he erected, in 1825, a mill, and a wall which projected into the river, but not farther than the abutment of the bridge, and was joined to it. This mill was recently burned, and the defendant is preparing to erect a new wall for the foundation of a new building, which new wall is massy and joined to the abutment of the bridge, and slopes off towards the east bank at an angle of ten degrees.

Oct. 1840.

The Mayor and Common Council of the city of Rochester
v.
Curtiss.

43

Oct. 1840.

The city of
Rochester
v.
Curtis.

The common council ask to restrain the erection of this wall, as it will greatly impede the flow of the river—endanger the safety of the bridge and other property in its vicinity in times of freshet—endanger the market, owned by them, north of this bridge, and another bridge across said river north of this bridge.

The other complainants have mill lots with mills thereon, on the west side of the river, whose tail races run immediately into the river, and they join in the bill, inasmuch as they allege that the erection of the defendant's wall will increase the back water upon their wheels in times of freshets.

*E. P. Smith*, for complainants.

*H. Humphrey*, for defendant.

THE VICE CHANCELLOR. The ground upon which the corporation complainants in this cause ask for an injunction is, that the erection of the wall already commenced by the defendant, will be an injury to the interests of those for whom they are trustees and guardians, either in their capacity as the local legislators of the city, or in their capacity as commissioners of highways. The bill claims that the erection of this wall, by reason of the narrowness of the Genesee river at that point, will expose the property of the city and of the citizens, at hazard, in times of floods, and that it is in itself an encroachment upon the easement to which all are entitled, by reason that the river at this point is declared to be a public highway, and the diversion of it to exclusive individual use. The ground upon which the other complainants ask for an injunction is, that the erection of the

wall, by the defendant, will produce an injury to them by increasing the back water upon their wheels in times of floods, and thus embarrass their lawful operations and injure the value of their property.

In the estimation of the city authorities the erection of this wall partakes of the character of a nuisance which they seek, by this bill, to prevent. I do not agree with the defendant's counsel that an injunction will not be allowed to prevent a nuisance. There are many cases in which this court will interpose its strong arm, by summary process, to prevent the erection of a nuisance which if erected would involve imminent danger, and lead to great or irreparable mischief. In such cases, though the party injured may have redress by indictment, and judgment and execution for the abatement of the nuisance. Yet in cases of considerable damage this court will not wait for the slow process of the courts of law, but will, in a clear case, interpose by injunction to prevent the mischief. And so in cases of intrusion by building upon property dedicated to the public use, as a square, a street, or highway, this court will in a clear case interfere, by an injunction to prevent it. In cases of doubtful right or remote and contingent injury, this court will wait for the right to be settled at law or the injury to become imminent, before it will interfere with its extraordinary process of injunction. The case before us is a case which will illustrate these general principles. Under the facts of this case there can be no doubt, if the defendant was about obstructing entirely the flow of the water under one of the arches of the bridge, and had commenced the erection of a massive wall for that purpose, but this court would at once interfere by in-

junction to restrain him from the prosecution of a work which would be so injurious in its consequences. The danger would be too imminent, the injury would be too irreparable, to permit the court to wait the slow progress of the courts at law, for the trial, conviction, and punishment of the defendant for the erection of such a nuisance. The propriety of a preliminary injunction will depend upon the facts of each case—whether the danger is more or less imminent, and whether the injury is more or less irreparable. Here, if the wall of the defendant did not obstruct the whole arch of the bridge, but only a part of it, the action of the court might be successfully evoked, if the obstruction threatened or contemplated was sufficient to justify the conclusion that great injury would follow in times of freshets. But if no injury at all would follow by the erection of the work commenced, under the circumstances stated in the case presented, this court would not listen to an application for a preliminary injunction. They would leave the parties to settle their rights as they should be advised, in such courts as they should be advised it was proper for them to resort to.

A preliminary injunction is allowed to prevent some present and immediate injury created by or consequent upon the act complained of, and when the right of the complainant is clear; but if the injury is remote and contingent, and dependent upon other circumstances not within the defendant's control, a preliminary injunction is not necessary, and such a strong process will not be issued without a case of necessity.

In the case before us, if we admit, as is doubtless the fact, that the Genesee river is too much narrowed

at the Main and Buffalo-street bridge for the safety
of the citizens and their property, yet we must as-
certain from the papers in this cause, why it is so.
The main and sole cause will be found to be in the
extension of the east abutment of the bridge beyond
the natural bank of the river, and into the channel of
the stream. This bridge, if not built by the corpo-
ration of the city of Rochester, is at any rate under
their control.

The defendant's lot lies immediately south of this
abutment, up stream. The defendant had previously
built his wall into the river as far as the east abut-
ment of the bridge extended. It is to be assumed
that inasmuch as the defendant's lot is described in
the bill as bounded on the river, that he owned to
the centre of the stream. If so, he had a right to
use and occupy it, if he so used and occupied it that
he injured neither other owners or the public. He
would not be permitted to build his wall so far out
into the stream as to prevent the free flow of water
through the arch of the bridge, if such obstruction
amounted to a public injury. But it is in proof in
this case, that it creates no additional obstruction to
the flow of the water, by building the wall out to the
line of the bridge abutment. This bridge abutment
is under the control of the corporation. The city
authorities may have thought that it was pushed too
far into the river for the safety of the city. They
may have thought that the destruction of the de-
fendant's building afforded them a good opportu-
nity to establish another line of wall, so as to give
a greater water way to the flow of the river; and if
they had taken steps to remove their own abutment
and given notice of such steps to the defendant, and

required him not to build farther into the river, they might possibly have presented a case strong enough for the interference of this court. But they have presented no such case. They have taken no steps and propose to take no steps to remove their own abutment, and yet they ask this court to restrain the defendant from building out no farther than their own erection extends. This abutment presents the principal obstacle to the free flow of the river. The wall of the defendant presents no additional obstacle to the free flow of the river. On the contrary, from the papers presented it is apparent that the wall now constructing by the defendant, from its slope toward the bank and from its junction with the corner of the abutment, so far from being an additional obstacle to the free flow of the river, is rather an advantage, by giving the floating flood wood a proper direction and preventing it from being arrested by the angular corner of the abutment. So long as the bridge abutment remains as it now does, the wall, if constructed as presented by the plan accompanying the defendant's affidavits, will be a positive benefit to the public. This is the opinion of an able engineer as appears from his affidavit. And it is besides apparent from philosophical principles, that it is better to have the wall constructed by the defendant as he proposes to construct it, than to have it moved back thirty feet. In the latter case, the abutment of the bridge would present a horizontal obstacle to the flow of the river, and an angle upon which the drift wood would be readily arrested. Both circumstances would, both by the accumulation of drift wood and the rebound of the water, create more back water also upon the wheels of the mills on the opposite

side, than would be produced by the construction of
the wall as the defendant proposes to construct it.
Under the circumstances presented by the papers, it
is hardly equitable that the city authorities, while per-
petuating their own abutment which constitutes the
chief obstacle to the flow of the river, should insist
that the defendant be restrained from constructing a
wall which presents no additional obstacle. The
other complainants are not in a situation to be expo-
sed to the same remark. They had nothing to do
with the building of the abutment, and have now no
control over it. But the same general reason will
apply in both cases, why an injunction should not
issue as prayed for, and that is, that there is no im-
mediate injury to accrue either to the city authorities
or to the other complainants, by the erection of the
wall of the defendant.

It is true that if the abutment is removed, the erec-
tion of the defendant's building may then be an injury
both to the public and the mill owners. But there
is no proposition or offer, or steps taken, to cause the
removal of such abutment; and if hereafter it is re-
moved, it is possible that the defendant's building may
hereafter be liable to be removed as a nuisance, as
possibly the bridge abutment may be now. Upon
this point, however, the court are not now called
upon to give an opinion. We only decide that the
erection of the defendant's wall, under the circum-
stances, can work no present or immediate injury to
any of the complainants, and no injury in and of itself,
until the bridge abutment is removed; and that there-
fore a preliminary injunction will be refused.

The complainants, however, farther insist that they
are entitled to have an injunction to restrain encroach-

Oct. 1840.

ment upon the river, inasmuch as by act of 1813, the Genesee river is declared to be a public highway; and an encroachment upon a public highway may be restrained, though there is no immediate injury.   My construction of this act, however, is that the highway in the river begins at the head of the rapids above this wall.   But even if it does not, the river is a highway only for particular purposes, viz. for the purposes of navigation; and the river at this point is not navigable.   An injunction will not, therefore, be allowed on this ground.

Motion for injunction denied with costs to be taxed.