No. 14 March 14, 2013 359

IN THE SUPREME COURT OF THE
STATE OF OREGON

Jean Marie HOWELL,
*Plaintiff*,

*v*.

Christopher David BOYLE
and City of Beaverton,
*Defendants*.

(US Court of Appeals for the Ninth Circuit 0936153;
SC S059120)

On certified questions from the United States Court of Appeals for the Ninth Circuit; certification order dated January 19, 2011; certification accepted February 17, 2011.

Argued and submitted September 8, 2011; reassigned April 24, 2012.

Janet M. Schroer, Hoffman Hart & Wagner, LLP, Portland, argued the cause for defendants. With her on the opening and reply briefs was Marjorie A. Speirs.

Michael H. Bloom, Michael H. Bloom PC, Salem, argued the cause and filed the brief for plaintiff.

Erin C. Lagesen, Assistant Attorney General, John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon.

Roy Pulvers, Hinshaw & Culbertson LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon Health & Science University.

Harry Auerbach, Chief Deputy City Attorney, Portland, filed a brief on behalf of *amicus curiae* League of Oregon Cities.

Lisa T. Hunt and Kathryn H. Clarke, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before Balmer, Chief Justice, Kistler, Walters, Linder, and Landau, Justices, and Durham and De Muniz, Senior Judges, Justices pro tempore.*

LANDAU, J.

Certified question answered.

De Muniz, J. pro tempore, dissented and filed an opinion, in which Walters, J., and Durham, J. pro tempore, joined.

Durham, J. pro tempore, dissented and filed an opinion.

_____

\* Brewer and Baldwin, JJ., did not participate in the consideration or decision of this case.

**LANDAU, J.**

This case is before the court on certified questions of Oregon law from the United States Court of Appeals for the Ninth Circuit (Ninth Circuit). *See generally* ORS 28.200 to 28.255 (granting authority to answer certified questions and describing procedure). The questions arise out of an action for personal injury brought in federal district court against defendant Boyle and his employer, the City of Beaverton, for injuries that plaintiff suffered in an automobile collision with a police car that defendant Boyle drove. A jury found that plaintiff and Boyle were equally at fault and that plaintiff's damages totaled approximately $1 million. The trial court reduced the award by half, in accordance with the jury's findings of comparative fault. Defendants then moved to reduce the award further, to the $200,000 limit of the Oregon Tort Claims Act in existence at the time. The trial court denied the motion, concluding that the application of the statutory limitation would violate the remedy clause of Article I, section 10, of the Oregon Constitution.

Defendants appealed, and the Ninth Circuit certified the following questions to this court:

"1. Is [plaintiff's] negligence action constitutionally protected under the Oregon [C]onstitution's remedy clause, Or. Const. art. I, § 10, irrespective of the jury's finding of comparative negligence? To what extent, if any, do the common[-]law defenses to contributory negligence of last clear chance, the emergency doctrine, and gross negligence [a]ffect this determination?

"2. If [plaintiff's] action is protected, is $200,000 an unconstitutional emasculated remedy despite the jury's finding of comparative negligence? To what extent, if any, do the common[-]law defenses to contributory negligence of last clear chance, the emergency doctrine, and gross negligence [a]ffect this determination?"

We address the second question only, because its answer is dispositive. Even assuming for the sake of argument that, under the circumstances of this case, plaintiff's negligence action is constitutionally protected by Article I, section 10, the $200,000 limitation on her recovery is constitutionally permissible. Under this court's case law, the constitution

requires that any remedy that remains after the imposition of a modern limitation on it be "substantial." In this case, the $200,000 judgment that plaintiff received satisfies that constitutional requirement.

## I.   BACKGROUND

To provide context for the Ninth Circuit's questions and our answer, we begin with a more detailed description of the facts and the procedural history of the case. In 2007, defendant Boyle, a City of Beaverton police officer, drove a motor vehicle west on the Tualatin Valley Highway. He struck plaintiff as she attempted to cross the highway at an unmarked crosswalk. As a result of that incident, plaintiff suffered serious injuries leading to permanent disability and significant medical expenses. Plaintiff brought a diversity action in the United States District Court for the District of Oregon, naming as defendants both Boyle and his employer, the City of Beaverton. Plaintiff alleged $4,779,529.25 in economic damages and up to $1 million in noneconomic damages.

Defendants answered, alleging that, among other things, plaintiff's injuries were caused by her own negligence because she had been "darting" across an unsafe intersection late at night while wearing dark clothes. In addition, defendants alleged that plaintiff's claims are subject to the "conditions, limitations, procedures and immunities contained in the Oregon Tort Claims Act." Specifically, defendants alleged that, because Boyle had acted within the course and scope of his employment, plaintiff could not maintain a claim against him and, under ORS 30.265(1),[1] was required instead to substitute the City of Beaverton. They also alleged that, in any event, to the extent that they are found liable, such liability is limited by the version of the Oregon Tort Claims Act then in effect to a maximum of $200,000. ORS 31.270(1)(b) (2007).[2]

---

[1] ORS 30.265(1) provides, in part, that "[t]he sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification *** shall be an action against the public body only."

[2] The Oregon Tort Claims Act has since been amended to increase the limitation of liability. Those amendments do not apply to this case.

Defendants moved to dismiss Boyle from the case pursuant to ORS 30.265(1). Plaintiff opposed the motion on the ground that, under this court's decision in *Clarke v. OHSU*, 343 Or 581, 175 P3d 418 (2007), to preclude the action against Boyle would violate plaintiff's right to a remedy guaranteed by Article I, section 10, of the Oregon Constitution. The trial court agreed and denied defendants' motion.

The case was tried to a jury, which determined that plaintiff and Boyle each were 50 percent at fault. The jury further found that plaintiff had incurred $765,000 in economic damages and $250,000 in noneconomic damages, for a total of $1,015,000. In accordance with the jury's findings of comparative fault, the court reduced plaintiff's damages by 50 percent and entered judgment against defendants for $382,500 in economic damages and $125,000 in noneconomic damages, for a total of $507,500.

Defendants then moved to amend the judgment to reduce the amount of damages to the $200,000 statutory limit. Plaintiff opposed the motion on the ground that applying the Oregon Tort Claims Act limit to this case "emasculated" her common-law remedy against defendants in violation of the remedy clause of Article I, section 10, of the Oregon Constitution. The trial court agreed with plaintiff and denied defendants' motion.

Defendants appealed to the Ninth Circuit, contending that the trial court had erred in denying their motion to reduce the judgment to the limits provided in ORS 31.270(1)(b) (2007). They advanced two arguments in support of that contention. First, they argued that, under this court's decision in *Lawson v. Hoke*, 339 Or 253, 119 P3d 210 (2005), Article I, section 10, does not even apply because plaintiff—having been found 50 percent at fault—would not have been able to recover anything under common-law negligence as it existed at the time of the framing of the Oregon Constitution. According to defendants, under the law prevailing at that time, contributory negligence in *any* amount on the part of the plaintiff operated as a complete bar to recovery. Second, they argued that, even if Article I, section 10, otherwise applies, the $200,000 cap is a

constitutionally adequate remedy under this court's recent precedents.

In response to defendants' first argument, plaintiff asserted that whether her fault would have precluded recovery under the law that existed at the time of the adoption of the state constitution is irrelevant. The sole and determinative issue, she argued, is whether she could have stated a claim for negligence, not whether the law at the time would have entitled her to a remedy. In the alternative, plaintiff argued that, even if it were appropriate to take into account defenses to a negligence action that would have applied in 1857, such as contributory negligence, the fact remains that the law recognized exceptions to that defense in cases of gross negligence, conditions of emergency, and circumstances in which the defendant had the "last clear chance" to avoid the injury. In response to defendants' second argument, plaintiff asserted that the limits established in ORS 31.270(1)(b) (2007) failed to provide a constitutionally adequate remedy because that statute indisputably prevented her from recovering the full amount of her damages.

Following the filing of the parties' briefing on the foregoing points, the Ninth Circuit entered an order certifying the two questions to which we have referred. This court accepted the certified questions and allowed further briefing. Before this court, the parties essentially reprise the arguments that they made to the Ninth Circuit.

## II.   ANALYSIS

Article I, section 10, of the Oregon Constitution provides, in part, that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." The provision is commonly referred to as the state constitutional "remedy clause." *See, e.g.*, *Juarez v. Windsor Rock Products, Inc.*, 341 Or 160, 164, 144 P3d 211 (2006) (referring to Article I, section 10, as containing a "remedy clause").

A.  *Prior Case Law on the Constitutional Adequacy of a Remedy*

This court has confronted constitutional challenges to various types of statutory remedy limitations in several previous cases, dating back at least to its 1901 decision in *Mattson v. Astoria*, 39 Or 577, 65 P 1066 (1901). In that case, the plaintiff initiated an action against the City of Astoria for injuries that were said to have been caused by the city's negligent maintenance of its public streets. The city invoked a provision of its charter, adopted pursuant to legislative authorization, exempting it and any of its council members from liability for such negligence. The lower court held the charter provision unconstitutional, and this court affirmed. The court explained that it is "unquestioned" that "it is within the power of a legislature to exempt a city from liability to persons receiving injuries on account of streets being defective or out of repair." *Id.* at 579. The injured party, the court explained, "is not wholly without remedy," because he or she may proceed against city officers or employees who have been delegated the duty of keeping the streets in repair. *Id.* In contrast, the court continued, the City of Astoria's charter purported to exempt both the city and its officers and employees, thus amounting to "a denial of any remedy." *Id.* at 580. Under Article I, section 10, the court explained, the legislature cannot "deny a remedy entirely." *Id.*

In *Evanhoff v. State Industrial Acc. Com.*, 78 Or 503, 154 P 106 (1915), the court took a similar approach to the adequacy of remedies under Article I, section 10. In that case, the plaintiff challenged the constitutionality of an early version of this state's workers' compensation legislation. Among other things, he contended that it violated the remedy clause of Article I, section 10. The court dismissed that particular argument summarily, noting that, at that time, the workers' compensation system was entirely voluntary. *Id.* at 517. Then, in *dictum*, the court went on to observe:

> "Many of the states for many years have had statutes fixing the liability with precision in cases of death, and in no instance has any court held such statute invalid. And

why a statute cannot fix with certainty the damages to
be allowed in case of the loss of an arm, leg, eye or other
injury is not perceived, and counsel fail to state any legal or
constitutional objection thereto."

*Id.* at 518 (quoting *Hawkins v. Bleakley*, 220 Fed 378, 381
(SD Iowa 1914)).

The following year, in *Humphry v. Portland*, 79
Or 430, 154 P 897 (1916), the court more explicitly cited
*Mattson* for the proposition that Article I, section 10,
prohibits only legislation that leaves a plaintiff wholly
without a remedy. Under that constitutional provision, the
court stated, "a right of action to recover damages for an
injury *** sustained cannot be so abridged by legislation
as to deprive the injured party of all remedy." *Id.* at 440.
*Noonan v. City of Portland*, 161 Or 213, 88 P2d 808 (1939),
followed suit. In that case, the court upheld a city charter
granting immunity to the city itself, but not to city officers.

In *Hale v. Port of Portland*, 308 Or 508, 523, 783
P2d 506 (1989), the court again held that Article I, section
10, prohibits limitations on common-law actions that leave
a plaintiff "entirely without a remedy." In that case, the
plaintiff suffered injuries in a motor vehicle collision. He
sued several defendants, including the City of Portland,
which the plaintiff alleged was negligent in maintaining
the road where the accident occurred. He sought more than
$600,000 in damages. The city moved to strike the claim
for damages in excess of the $100,000 limitation that the
Oregon Tort Claims Act then imposed. The trial court
granted the motion, and the Court of Appeals affirmed.
On review, the plaintiff argued that, among other things,
the statutory damage limitation violated Article I, section
10. This court rejected the argument. Reviewing its prior
cases—in particular, *Noonan* and *Evanhoff*—the court
explained that those decisions "held only that Article I,
section 10, is not violated when the legislature alters ***
a cause of action, so long as the party injured is not left
entirely without a remedy." *Id.* at 523. "[I]t is enough," the
court declared, "that the remedy is a substantial one." *Id.*

In determining that the limitation on the plaintiff's
damages did not deprive him of a "substantial" remedy, the

court observed that the statutory damage limitation applied regardless of whether the damages that a plaintiff suffered arose out of a governmental or proprietary function. *Id*. Thus, the court noted, the challenged statute represented a *quid pro quo*. On the one hand, it limited the amount of damages that could be recovered, while on the other hand, it expanded the types of cases that could trigger municipal liability by eliminating the traditional immunity that applied when damages arose as a result of a municipality performing a governmental function:

> "The class of plaintiffs has been widened by the legislature by removing the requirement that an injured party show that the municipal corporation's activity that led to the injury was a proprietary one. At the same time, however, a limit has been placed on the size of the award that may be recovered. A benefit has been conferred, but a counterbalancing burden has been imposed. This may work to the disadvantage of some, while it will work to the advantage of others."

*Id*. The court did not say that such a *quid pro quo* was *required* to satisfy the requirements of Article I, section 10. But it concluded that such a "new balance" was clearly within the legislature's authority, notwithstanding the limitations of the remedy clause. *Id*.

In *Neher v. Chartier*, 319 Or 417, 879 P2d 156 (1994), this court again addressed the constitutionality of a statutory limitation on damages. In that case, the plaintiff's daughter was killed when she was struck by a Tri-Met bus driven by the defendant, Chartier. The daughter was acting within the scope of her employment at the time of the accident, and, under existing workers' compensations statutes, the estate recovered the maximum $3,000 burial benefit. The plaintiff, as the representative of the estate, then initiated an action against Chartier and Tri-Met. The defendants, however, moved for judgment on the pleadings, arguing that they were immune under a provision of the Oregon Tort Claims Act that granted immunity to public bodies and their employees for claims arising out of injuries that were covered by workers' compensation law. The trial court granted the motion, and the Court of Appeals affirmed, concluding that the substitute remedy of workers'

compensation benefits for tort damages did not leave the plaintiff wholly without a remedy.

This court disagreed, in part. Citing its earlier decision in *Hale*, the court first noted that Article I, section 10, "is not violated 'so long as the party injured is not left entirely without a remedy,'" and that remedy is "'substantial.'" *Id.* at 426 (quoting *Hale*, 308 Or at 523). With that standard in mind, the court concluded that the estate itself had not been left wholly without a remedy, as it was entitled to $3,000 in burial expenses under the workers' compensation law. *Neher*, 319 Or at 426. But, the court said, the estate was not the only real party in interest in a wrongful death action; the decedent's parents also were parties, and they were not entitled to those benefits. "Thus," the court concluded, "although the decedent's estate (for which a parent happens to serve as a personal representative) has not been left 'wholly without remedy,' the surviving parents of the decedent, who otherwise would be entitled to recover, *** *have* been left wholly without a remedy." *Id.* at 426-27 (emphasis in original).

In *Greist v. Phillips*, 322 Or 281, 906 P2d 789 (1995), the court addressed the constitutionality of another statutory limitation on damages, in that case ORS 18.560(1), which imposed a $500,000 limitation on noneconomic damage awards.[3] The plaintiff had been awarded economic damages of $100,000 and noneconomic damages of $1.5 million, but the trial court reduced the award of noneconomic damages in accordance with the statutory limitation. On review, the plaintiff argued that the limitation on the noneconomic damage award violated Article I, section 10. Specifically, the plaintiff argued that the statutory limitation "wholly denies a remedy for legitimate losses that exceed $500,000." *Id.* at 290. This court rejected the argument. Citing both *Hale* and *Neher*, the court held that "[p]laintiff has not been left without a remedy. She has received $600,000, comprised of $500,000 in noneconomic damages and $100,000 in economic damages. *** Although that remedy is not precisely of the same extent as that to which plaintiff was

_____

[3] The statute later was declared unconstitutional on other grounds in *Lakin v. Senco Products, Inc.*, 329 Or 62, 82, 987 P2d 463 (1999).

entitled before the enactment of ORS 18.560(1), that remedy is substantial." *Id.* at 291. The court held that the remedy was substantial, among other things, "because 100 percent of economic damages plus up to $500,000 in noneconomic damages is a substantial amount." *Id.* The court's holding in *Greist* prompted a concurring opinion from Justice Unis, who took the court to task for applying a substantial remedy test, which he argued was "vague and gives no guidance to legislators, litigants, or ordinary citizens as to how courts will apply the standard." *Id.* at 311 (Unis, J., concurring in part, specially concurring in part).

In *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 124, 23 P3d 333 (2001), the court engaged in a wholesale reevaluation of its remedy clause jurisprudence. The court engaged in an extended historical analysis of the scope and effect of the remedy clause and established a new method of analysis of claims arising under it. 332 Or at 123-24. In that case, the plaintiff had been injured in a work-related accident. He filed a claim under the state's workers' compensation statutes, but that claim was denied. He then filed a claim for negligence against his employer. *Id.* at 86. The employer responded with a motion to dismiss the claim on the face of the pleadings on the ground that the workers' compensation statutes provided the exclusive remedy for work-related injuries. The trial court granted the employer's motion, and the Court of Appeals affirmed. *Smothers v. Gresham Transfer, Inc.*, 149 Or App 49, 941 P2d 1065 (1997). This court reversed, holding that the trial court should not have granted the employer's motion to dismiss because the statute providing that the workers' compensation law is the exclusive remedy for work-related injuries violated the remedy clause. *Smothers*, 332 Or at 86.

In brief, the court explained that the remedy clause of Article I, section 10, was "intended to preserve common-law right[s] of action." *Id.* at 119. The court summarized its analysis in the following terms:

"Drafters of remedy clauses in state constitutions sought to protect absolute common-law rights by mandating that a remedy always would be available for injury to those rights. The drafters of the Oregon remedy clause identified

absolute rights respecting person, property, and reputation as meriting constitutional protection under the remedy clause. As to those rights, the remedy clause provides, in mandatory terms, that remedy by due course of law shall be available to every person in the event of injury. The word 'remedy' refers both to a remedial process for seeking redress for injury and to what is required to restore a right that has been injured. Injury, in turn, is a wrong or harm for which a cause of action existed when the drafters wrote the Oregon Constitution in 1857. A common-law cause of action is a constitutionally adequate remedy for seeking redress for injury to protected rights. However, the remedy clause does not freeze in place common-law causes of action that existed when the drafters wrote the Oregon Constitution in 1857. The legislature may abolish a common-law cause of action, so long as it provides a substitute remedial process in the event of an injury to the absolute rights that the remedy clause protects."

*Id.* at 124.[4] The court then articulated a method of analyzing claims brought under the remedy clause that consists of answering two questions:

"[I]n analyzing a claim under the remedy clause, the first question is whether the plaintiff has alleged an injury to one of the absolute rights that Article I, section 10[,] protects. Stated differently, when the drafters wrote the Oregon Constitution in 1857, did the common law of Oregon recognize a cause of action for the alleged injury? If the answer to that question is yes, and if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury."

*Id.*

        Turning to the particulars of that case, the court determined that the plaintiff's action for negligence against his employer would have been recognized at common law in 1857 and that, because the exclusive remedy provision of

        [4] The court noted that, in a number of its earlier Article I, section 10, cases, such as *Noonan*, it had suggested that the remedy clause was not intended to preserve common-law rights and that later cases, such as *Hale*, had repeated the suggestion. *Smothers*, 332 Or at 118-19. The court disavowed those statements, *id.* at 119, which have no bearing on the questions before us in this case.

the workers' compensation statutes completely eliminated that common-law remedy, the statute was unconstitutional: "Having alleged an injury of the kind that the remedy clause protects, and having demonstrated that there was no remedial process available under present workers' compensation laws, plaintiff should have been allowed to proceed with his negligence action." *Id.* at 136.

Thus, under *Smothers*, the initial question is whether, under the circumstances of the case, the common law of Oregon would have recognized a cause of action for the claimed injury. If the answer to that question is no, then the remedy clause is not implicated, and the matter is at an end. If the answer to the first question is yes, then we must determine whether a challenged limitation renders the common-law remedy constitutionally inadequate.

*Smothers* did not supply much in the way of explanation as to how we are to determine the adequacy of a remedy under Article I, section 10. The court noted that, in its prior cases, it had never held "that the remedy clause prohibits the legislature from changing a common-law remedy or form of procedure, attaching conditions precedent to invoking the remedy, or perhaps even abolishing old remedies and substituting new remedies." *Id.* at 119. That said, the court declared that neither can the legislature substitute an "'emasculated remedy' that is incapable of restoring the right that has been injured." *Id.* at 119-20. In that regard, the court explicitly noted that, in *Hale*, *Neher*, and *Greist*, it had concluded that a remedy is adequate under Article I, section 10, so long as it is "substantial." *Id.* at 120 n 19. The court stated that it was simply "beyond the scope of this opinion to address issues relating to the adequacy of the amount of damages that may be available under a legislatively substituted process." *Id.*

*Clarke v. OHSU*, 343 Or 581, 175 P3d 418 (2007), was the first post-*Smothers* decision to address the constitutionality of a statutory damage limitation in any detail.[5] In that case, the plaintiff suffered permanent brain

_____

[5] In *Jensen v. Whitlow*, 334 Or 412, 51 P3d 599 (2002), the plaintiff challenged, in federal district court, the constitutionality of the statutory damage limitation imposed by the Oregon Tort Claims Act both facially and as applied. The federal

damage as a direct consequence of the negligence of Oregon Health and Science University (OHSU) and certain of its employees and agents. *Id.* at 586. The damages resulting from his injuries totaled more than $17 million. *Id.* The defendants, however, admitted negligence and, invoking the damage limitation of the Oregon Tort Claims Act, moved for entry of judgment against them for $200,000. *Id.* at 587. The trial court granted the motion and entered judgment accordingly. *Id.*

On review, the plaintiff argued that the statutory damage limitation of $200,000 violated Article I, section 10. *Id.* The court held that, because OHSU was an instrumentality of the state that would have been immune from liability at common law, the limitation of its liability posed no issue of constitutional adequacy under the remedy clause. As to the individual defendants, however, the court concluded that the statutory damage limitation was unconstitutional on the facts of that case. *Id.* at 610.

The court began its opinion in *Clarke* by recapitulating its prior cases on the subject, including *Hale*, *Neher*, *Greist*, *Smothers*, and *Jensen*. *Id.* at 601-06. Among other things, the court quoted with approval the portion of *Hale* that described the proper analysis of the adequacy of a remedy under Article I, section 10, as depending on whether the existing remedy "is a *substantial one*;" indeed, the *Clarke* court added its own emphasis to the words "substantial one." *Id.* at 602. Consistently with that emphasis, the court summarized the significance of its prior cases in the following terms:

---

district court submitted to this court the question whether the damages limitation, "on its face or as applied," violates several provisions of the state constitution, including Article I, section 10. *Id.* at 415. This court declined to answer the question to the extent that it pertained to as-applied challenges to the damages limitation because the record was inadequate to enable the court to answer the question. *Id.* As for the facial challenge to the damages limitation, the court framed its analysis in terms of the two *Smothers* questions. *Id.* at 418. It then assumed, without deciding, that the answer to the first question was that the injury at issue was one for which Article I, section 10, guarantees a remedy. *Id.* Turning to the second question, concerning the adequacy of the modern remedy, the court concluded that, "because a damages award has yet to be determined in this case, the damages 'cap' does not render the remedy available to plaintiff 'incapable of restoring the right that has been injured.'" *Id.* at 421 (quoting *Smothers*, 332 Or at 119-20).

> "[A]s our review of the cases demonstrates, Article I, section 10, does not eliminate the power of the legislature to vary and modify both the form and the measure of recovery for an injury, as long as it does not leave the injured party with an 'emasculated' version of the remedy that was available at common law."

*Id.* at 606. The court acknowledged that neither the constitution itself nor the prior case law provides a precise test for determining whether a particular remedy has been "emasculated." *Id.* Having said that, the court concluded that the disposition of the case before it was "relatively simple," given the fact that the statutory damage limitation deprived the plaintiff of all but a very small portion of the over $17 million in damages that he suffered. *Id.* at 607.

To the defendants' argument that even the relatively small amount allowed by the statutory limitation was sufficient under *Hale* and *Greist*, the court replied that those cases were distinguishable on their facts. In Clarke's case, the court held, the claim of the plaintiff against the individual defendants had been essentially eliminated. The court reiterated that "the legislature is authorized under Article I, section 10, to vary or modify the nature, the form, or the amount of recovery for a common-law remedy," but added that "that authority is not unlimited." *Id.* at 609.

In a concurring opinion, Justices Balmer and Kistler emphasized that, although *Hale* and *Greist* were distinguishable on their facts, "nothing in the majority opinion undermines the holdings in those cases that the [r]emedy [c]lause does not prohibit the legislature from imposing caps on tort damages as long as those caps do not deprive a plaintiff of a 'substantial remedy.'" *Id.* at 615-16 (Balmer, J., concurring).

The foregoing case law consistently holds that the legislature is authorized to enact a limitation on tort claim recovery so long as the remaining remedy is "substantial." As the court declared—twice—in *Clarke*, Article I, section 10, does not deprive the legislature of the authority "to vary and modify both the form *and the measure of recovery* for an injury," so long as the legislature does not leave the injured party with an "emasculated" remedy. 343 Or at 606

(emphasis added); *id.* at 609 (the legislature is authorized "to vary, or modify the nature, the form, *or the amount of recovery* for a common-law remedy" (emphasis added)). The reference to "emasculated" remedies is unfortunate, if not sexist,[6] and we discourage its further use in favor of the references in the case law to the necessity that remaining remedies be "substantial."[7]

## B.  *Application*

With those considerations in mind, we turn to this case. Under *Smothers*, we confront two questions. First, we must determine "whether an 'absolute common-law right' that existed when the Oregon Constitution was drafted in 1857 would have provided plaintiff with a remedy for the injuries that she sustained in the accident with defendant." *Lawson*, 339 Or at 259. For the purposes of this opinion, we assume, without deciding, that the answer to that question is, yes. *See Jensen*, 334 Or at 418 (assuming, without deciding, that the plaintiff's injury was protected by Article I, section 10, "because the second step of the *Smothers* analytical framework is dispositive"). That triggers a second question; namely, whether the legislatively adopted limitation on that remedy is "constitutionally adequate." *Smothers*, 332 Or at 124.

As we have noted, under this court's prior case law, the constitutional adequacy of a modern remedy may be established by the fact that the modern remedy is "substantial" and does not leave the plaintiff "wholly without

---

[6] *Webster's* defines "emasculate" as:

"**1:** to deprive of virile or procreative power **:** CASTRATE, GELD **2 :** to deprive of masculine vigor or spirit **:** weaken or attenuate by removal or alteration of potent qualities as **a :** to divest (language) of vigor and freedom (as by excision, euphemism, or weakening of sense) **b :** to deprive (a law) of force or effectiveness (as by amendment or interpretation)."

*Webster's Third New Int'l Dictionary* 738 (unabridged ed 2002). The use of the term in the Article I, section 10, context has been justly criticized for its implication that "strength and vitality are gender-specific." *Ackerman v. OHSU Medical Group*, 233 Or App 511, 532 n 10, 227 P3d 744 (2010).

[7] The particular term used in reference to the inadequacy of remedies under Article I, section 10, traces back to *West v. Jaloff*, 113 Or 184, 232 P 642 (1925), in which the court rejected the defendant's proposed construction of a statute that conferred limited immunity from liability on ambulance drivers because the construction would give the plaintiff "an emasculated remedy wholly inadequate under many conditions." *Id.* at 195.

remedy." In this case, defendants contend that plaintiff's remedy of $200,000 is constitutionally adequate under that test. Defendants are correct.

The cases make clear that the mere fact that the statutory limitation resulted in a reduction in the amount that plaintiff otherwise would have been awarded, by itself, does not establish a violation of Article I, section 10. As this court explained in *Clarke*, Article I, section 10, does not deprive the legislature of the authority "to vary and modify both the form *and the measure of recovery* for an injury," so long as the legislature leaves the plaintiff with a substantial remedy. 343 Or at 606 (emphasis added). Likewise, in *Hale*, the court declared that "Article I, section 10, is not violated when the legislature alters *** a cause of action, so long as the party injured is not left entirely without a remedy. *** [I]t is enough that the remedy is a substantial one." 308 Or at 523.

This court has never spelled out the precise contours of such a determination. Such precision is perhaps impossible. *See Clarke*, 343 Or at 613 (Balmer, J., concurring) ("This court has not articulated a precise test, and it probably is not possible to do so."). As this court has stated in another context, determining whether an award of damages is "substantial" requires "flexibility and a consideration of the facts and circumstances that each case presents." *Hamlin v. Hampton Lumber Mills, Inc.*, 349 Or 526, 537, 246 P3d 1121 (2011).

This court has concluded that a legislative limitation on damages is constitutionally inadequate in only two cases, *Neher* and *Clarke*. In the former case, the court held that, although the estate of the victim had not been completely deprived of a remedy by virtue of the existence of a $3,000 burial benefit under workers' compensation law, the parents of the victim had been *totally* deprived of any remedy. In the latter case, this court held that, when the statutory limitation of $200,000 deprived the plaintiffs of all but one percent of the more than $17 million in damages that they would have otherwise recovered, the limitation left them with a constitutionally inadequate remedy.

In this case, but for the $200,000 damage limitation of ORS 31.270(1)(b) (2007), plaintiff would have recovered a total of $507,500, consisting of $382,500 in economic damages and $125,000 in noneconomic damages. The damage limitation thus does not leave plaintiff "wholly without a remedy," as was the case for the parents of the plaintiff in *Neher*. And it represents a far more substantial remedy than the paltry fraction that remained after the imposition of the limitation in *Clarke*.

The facts of this case are much more like those of *Hale*, in which the court found that a statutory damage limitation of $100,000 left the plaintiff with a substantial remedy even though the plaintiff had alleged more than $600,000 in damages. To be sure, this court observed that the legislature, in adopting the statutory damage limitation at issue in that case, had in effect exchanged the limitation for a statutory expansion of the class of persons who are permitted to sue. 308 Or at 523. But the distinction is of no moment in this case, in which a similar *quid pro quo* may be seen to apply. As to defendant City of Beaverton, in fact, the same "balance" that the court mentioned in *Hale* applies. As to defendant Boyle, under ORS 30.265(1) and 30.285(1), the city remains liable for the torts of its employees committed within the scope of employment. Thus, while the legislature limited the amount that may be recovered from individual defendants who are municipal employees, it substituted the "deep pocket" of the municipality itself as the ultimate payor. Plaintiffs, in other words, have been conferred a substantial benefit in exchange for the damage limitation. As *Hale* makes clear, that is a permissible legislative decision under Article I, section 10.

This case is even more like *Greist*, in which the court held that the plaintiff was not left without a remedy when the tort claim limitation left her with a total of $600,000 in damages, compared with the initial award of $1.5 million. "Although that remedy is not precisely of the same extent as that to which plaintiff was entitled" before the imposition of the limitation, the court explained, "that remedy is substantial." 322 Or at 291. The same is true in this case.

Plaintiff insists that her common-law right to recover damages for negligence has been inadequately remedied with the $200,000 tort claim limitation. She reasons that, "under the common law, the plaintiff had the right to obtain a full recovery for damages from the individual tortfeasor who negligently caused the injuries— in other words, she was entitled to be made whole." It is that common-law right—the right to be made whole—that she contends has been eliminated with the imposition of the statutory damage limitation.

The dissent takes a similar approach.[8] According to the dissent, the remedy clause guarantees plaintiff "the full amount of economic damages attributable to defendant." 353 Or at 359 (De Muniz, J. pro tempore, dissenting). The dissent states that, as such, Article I, section 10, does not countenance "partial" remedies. *Id.* at 393 (De Muniz, J. pro tempore, dissenting).[9]

Plaintiff's and the dissent's interpretation of Article I, section 10, is essentially the same interpretation that the plaintiff asserted in *Greist*, and that this court explicitly rejected. *See Clarke*, 343 Or at 615 (Balmer, J., concurring) (noting that *Greist* rejected the argument that Article I, section 10, guarantees a right to be made whole). Indeed, plaintiff's and the dissent's interpretation cannot be squared with *any* of the foregoing cases dating back at least to 1901—cases that consistently hold that Article I, section 10, "does not eliminate the power of the legislature to vary and modify both the form *and the measure* of recovery for an injury," *Clarke*, 343 Or at 606 (emphasis added), but rather guarantees that plaintiffs not be left with less than a "substantial" remedy. *Id.* at 602,

---

[8] There are actually two dissents, one authored by Justice De Muniz and the other by Justice Durham. As we understand it, however, Justice Durham's opinion merely emphasizes one of the points made by Justice De Muniz. Accordingly, when we refer to "the dissent," we refer to the one authored by Justice De Muniz.

[9] The dissent is not entirely consistent on this point. Throughout the opinion, it complains about our holding countenancing "partial" remedies and asserts that "the constitution plainly requires that plaintiff have a fully restorative remedy." 353 Or at 406 (De Muniz, J. pro tempore, dissenting). At other points in the opinion, however, the dissent suggests that a constitutionally sufficient remedy must be at least "capable" of being fully restorative. *Id*. at 391, 392, 394, 396 (De Muniz, J. pro tempore, dissenting). The dissent does not explain the significance of that difference in phrasing.

605; *Greist*, 322 Or at 291; *Hale*, 308 Or at 523. Plaintiff's and the dissent's interpretation essentially inverts that longstanding interpretation of the remedy clause from one that guarantees that plaintiffs not be left "wholly without remedy" to one that guarantees that plaintiffs obtain a whole remedy.

The dissent acknowledges that we have correctly described our prior case law as holding that the remedy clause does not limit legislative authority to alter a remedy so long as the remaining remedy is "substantial."[10] But it insists that our understanding of the meaning of the word "substantial" is in error. According to the dissent, that term, as used in remedy clause cases, has acquired a special meaning that is somewhat different from what it ordinarily means. The dissent asserts that a "substantial" remedy is one that wholly restores a plaintiff's injury.

In asserting that the notion of a "substantial" remedy is limited to one that is wholly restorative of a plaintiff's injury, the dissent claims support from this court's decisions in *Hale* and *Greist*. The dissent's reading of those decisions, however, does not bear careful scrutiny.

As we have noted, in *Hale*, the court upheld the application of a damage limitation that had the effect of reducing $600,000 in claimed damages to $100,000. The court held that Article I, section 10, does not deprive the legislature of authority to alter a cause of action or reduce damages. "[T]he remedy need not be precisely of the same type or extent" as those existing at common law, the court explained. 308 Or at 523. "[I]t is enough that the remedy is a substantial one." *Id*.

The dissent deftly describes the court's analysis in *Hale* without mentioning the fact that the court specifically stated that the remedy clause leaves the legislature free to alter the "type *or extent*" of damages that may be recovered.

_____

[10] Actually, the dissent is not quite consistent in that regard, as well. At one point, the dissent takes us to task for abandoning the use of the outdated term "emasculated," used in some cases, in favor of the term "substantial," used in others. 353 Or at 390 (De Muniz, J. pro tempore, dissenting). In the balance of the opinion, the dissent acknowledges the importance of the term in prior cases, but asserts that the term has been "imbued" "with a clear meaning," that is, one that wholly restores a right that has been injured. *Id*.

Instead, the dissent embarks on a detailed analysis of two earlier cases that the court in *Hale* cited—*Noonan* and *Evanhoff*—which the dissent reads as holding that the remedy clause is not violated when an alternative remedy remains available. 353 Or at 392-96 (De Muniz, J. pro tempore, dissenting). The dissent then boldly declares that, because "[n]either of those cases can be read for the proposition that a partial remedy *** is capable of satisfying the [r]emedy [c]lause," *Hale* cannot be read to countenance such a partial remedy, either. *Id.* at 393 (De Muniz, J. pro tempore, dissenting). That makes no sense. Even assuming for the sake of argument that the dissent fairly characterizes *Noonan* and *Evanoff* as not involving the issue of the constitutionality of partial remedies, the fact remains that *Hale* did. And it simply cannot be denied that *Hale* upheld the constitutionality of a partial remedy.

The dissent's reading of *Greist* is similarly unavailing. As we have noted, in that case, the court upheld a statutory damage limitation that reduced the plaintiff's initial award from $1.5 million to a total of $600,000, consisting of $100,000 in economic damages and $500,000 in noneconomic damages. The court held that, even though $600,000 was only slightly more than one third of the original award, that total amount nevertheless was constitutionally adequate because it was a substantial amount:

> "Plaintiff has not been left without a remedy. She has received $600,000, comprised of $500,000 in noneconomic damages and $100,000 in economic damages. There was no statutory limit on the latter category of damages. *Although that remedy is not precisely of the same extent as that to which plaintiff was entitled before the enactment of ORS 18.560(1), that remedy is substantial.*"

322 Or at 291 (emphasis added). The dissent ignores the court's holding in *Greist*. According to the dissent, the decision actually was predicated on the fact that recoveries for wrongful death historically were quite low. 353 Or at 395 (De Muniz, J. pro tempore, dissenting). But that is simply not what the court in *Greist* said. Rather, as the foregoing quotation makes clear, the court held that the amount of plaintiff's award of $600,000 was a substantial award, in and of itself. The court then offered *an additional* reason

for its decision, observing that the award was substantial "*also* because the statutory wrongful death action in Oregon has had a low limit on recovery." 322 Or at 291 (emphasis added).

The dissent also suggests that, in any event, *Greist* has limited precedential value because it involved the application of the remedy clause to claims for wrongful death, which this court has subsequently determined are not subject to the remedy guarantee of Article I, section 10. 353 Or at 394 n 5 (De Muniz, J. pro tempore, dissenting). That is a curious criticism. That this court later held that its remedy clause analysis does not apply to wrongful death claims, *see Hughes v. PeaceHealth*, 344 Or 142, 151-52, 178 P3d 225 (2008), in no way suggests that the remedy clause analysis itself was wrong. In fact, in subsequent Article I, section 10, cases, this court has continued to cite and discuss *Greist*—and *Neher*, also a wrongful death case—in describing its remedy clause analysis. *Clarke*, for example, contains extensive discussions of both *Greist* and *Neher* without any suggestion that either has limited precedential value. *Clarke*, 343 Or at 603-05.

The dissent also complains that we have observed that this case is unlike other cases, such as *Clarke*, in which the court concluded that a remedy was constitutionally inadequate. According to the dissent, we have engaged in logically fallacious reasoning in deducing that, because this case is not like *Clarke*, the remedy is constitutionally adequate. If that were what we actually said, the dissent would have a point. But nowhere in our opinion have we concluded that, merely because this case is unlike *Clarke* or any other prior decision, it follows that the result in this case must be different. The dissent's complaint, in other words, amounts to no more than attacking a straw person.

The dissent also complains that our conclusion that a partial remedy may be constitutionally adequate under Article I, section 10, fails to adhere to the "text and context" of the remedy clause. 353 Or at 389 (De Muniz, J. pro tempore, dissenting). Interestingly, the dissent offers nothing to support that assertion. In that regard, however, we note that nothing in the wording of the remedy clause

says anything about a right to be *wholly* restored. It guarantees remedy "by due course of law." *Smothers*, 332 Or at 121-22. It is the dissent's reading of Article I, section 10, that fails to comport with the text of the constitution. If, as the dissent suggests, Article I, section 10, requires that all remedies must be "fully restorative," 353 Or at 406 (De Muniz, J. pro tempore, dissenting), then the "due course of law" clause is rendered superfluous.

The dissent nevertheless claims support for its position from *Smothers*, relying on this court's description of the term "remedy" as including, in part, "that which is 'required to restore a right that has been injured.'" 353 Or at 399 (De Muniz, J. pro tempore, dissenting) (quoting *Smothers*, 332 Or at 124). The dissent leaves out the following sentence from its quotation, which states that, "[i]njury, in turn, is a wrong or harm for which a cause of action existed when the drafters wrote the Oregon Constitution in 1857." *Smothers*, 332 Or at 124. Thus, what must be "restored" is an injury that would have been recognized as the basis for a cause of action *in 1857*. In that regard, the dissent fails to mention that, in the mid-nineteenth century, negligence claims were subject to the doctrine of contributory negligence, which operated as a complete bar to a plaintiff's recovery. *See generally Lawson*, 339 Or at 262 (noting "the indisputable proposition that, in the early years of this state's history, a plaintiff's contributory negligence was an absolute bar to recovery for the negligent acts of another").[11]

---

[11] The first appearance of contributory negligence in a state court is usually traced to *Smith v. Smith*, 19 Mass (2 Pick) 621 (1824), in which the court upheld the dismissal of a negligence action. "This action cannot be maintained," the court explained, "unless the plaintiff can show that he used ordinary care; for without that, it is by no means certain that he himself was not the cause of his own injury." *Id*. at 623. By 1860, nearly every state had expressly recognized the doctrine of contributory negligence, most often as a matter of the plaintiff's affirmative burden. As one modern scholar has observed, "[i]n the space of a few decades, the doctrine of contributory negligence gained almost unanimous acceptance within the United States." Peter N. Swisher, *Virginia Should Abolish the Archaic Tort Defense of Contributory Negligence and Adopt a Comparative Negligence Defense in its Place*, 46 U Rich L Rev 359, 361 (2011). As another commented, the doctrine "rapidly spread, 'not unlike an unchecked conflagration in a windstorm' throughout the country." Stuart M. Speiser et al., 3 *The American Law of Torts* § 12:2, 249-50 (2008) (quoting E. A. Turk, *Comparative Negligence on the March*, 28 Chi-Kent L Rev 189 (1950)).

Moreover, under the prevailing law at the time that the state's constitution was adopted, a plaintiff was required to prove not only that his or her injuries were caused by a defendant's negligence but also that his or her own actions did not contribute to those injuries. Contributory negligence, in other words, was a principle of causation that constituted a part of a plaintiff's burden of proof.

Although we are aware of no pertinent case law from the courts of this state dating precisely to the time of the adoption of the constitution, there are several cases dating to a few short years later that strongly suggest that Oregon's courts followed the established rule. [12] *See*

Nineteenth-century treatises confirm that, at the time, the general rule was that a plaintiff bringing a claim for negligence bore the burden of demonstrating that his or her injuries were not a result of the plaintiff's own negligence. As early as 1811, Selwyn's treatise on *nisi prius* stated that a plaintiff seeking to recover damages must show that he acted with "common and ordinary caution." 2 W. Selwyn, *An Abridgment of the Law of* Nisi Prius 1092 n 5 (1811). Hilliard's 1866 treatise on the law of torts declared that "it is the prevailing doctrine, that, to sustain an action on the case for negligence, *the burden of proof* is on the plaintiff to show negligence, wil[l]ful or otherwise, on the part of the defendant, and ordinary care on his own part." Francis Hilliard, 1 *The Law of Torts or Private Wrongs* 125-26 (3d ed 1866) (emphasis in original). *See also* Theodore Sedgwick, *A Treatise on the Measure of Damages* 493 (3d 1858) ("[T]he party seeking legal redress must not only show his adversary to be in the wrong, but must also be prepared to prove that no negligence of his own has tended to increase or consummate the injury.").

[12] Over 100 reported early nineteenth-century cases reflect the widespread adoption of the doctrine of contributory negligence, most often as a matter of the plaintiff's affirmative burden. *See, e.g.*, *Crommelin v. Coxe & Co.*, 30 Ala 318, 329 (1857) ("[T]he plaintiffs in this case would not be heard to complain, if with ordinary care and diligence they could have avoided the injury."); *Daley v. Norwich & W.R. Co.*, 26 Conn 591, 597 (1858) ("Two things must concur to support this action; an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."); *Rusch v. City of Davenport*, 6 Iowa 443, 451 (1858) ("We think there is no doubt, but that the burden of proof was on the plaintiff to show to the jury, that the accident happened without any want of reasonable care on his part."); *Galena & C. U. R. Co. v. Jacobs*, 20 Ill 478, 488 (1858) ("[T]he plaintiff is only bound to show that the injury was produced by the negligence of the defendant, and that he exercised ordinary care and diligence in endeavoring to avoid it."); *Evansville & C.R. Co. v. Hiatt*, 17 Ind 102, 105 ("In this class of suits, the plaintiff must, as a general proposition, prove that the proximate, the immediate, cause of the injury sued for, was the wrongful act of the defendant, to which injury his own wrongful act did not immediately contribute."); *Carlisle v. Holton*, 3 La Ann 48, 49 (1848) ("[A] party cannot be heard as plaintiff who has contributed to the collision by his own negligence or improper management."); *Lane v. Crombie*, 29 Mass 176, 177 (1831) ("[T]he burden of proof was upon the plaintiff to show that the accident was not occasioned by her own negligence."); *Adams v. Wiggins Ferry Co.*, 27 Mo 95, 98 (1858) ("The rule [is] that there can be no recovery when both plaintiff and defendant are [at] fault, and each, by his negligence or otherwise, has contributed proximately and directly to the injury."); *Lehman v.*

*Smothers*, 332 Or at 129 (relying on other-state and post-1870s case law to determine the state of negligence at the time of the adoption of the Oregon Constitution). In *Kahn v. Love*, 3 Or 206 (1870), the occupant of a building sued the owner for damages for injuries caused by the unsafe condition of the building. The owner demurred to the complaint because, among other things, the plaintiff had failed to allege that his injuries were not caused by his own lack of care. The trial court sustained the demurrer and dismissed the complaint. This court affirmed, explaining that "[t]he plaintiff in an action for damages, occasioned by the defendant's negligence, must so frame his complaint as not to leave an inference that he was guilty of negligence that contributed to the injury." *Id.* at 208.

To similar effect is *Walsh v. Oregon Ry. & Navigation Co.*, 10 Or 250 (1882). In that case, the plaintiff was injured as he stuck his head out of a moving train as it passed by a water tower. The trial court dismissed the action before

---

*City of Brooklyn*, 29 Barb 234, 236 (NY 1859) ("To entitle the plaintiff to recover, it must appear, affirmatively, that the accident resulted wholly from the negligence of the defendant, and that the negligence and improvidence of the plaintiff did not contribute to bring it about."); *Kennard v. Burton*, 25 Me 39, 47 (1845) ("In suits against towns for the recovery of damages for injuries occasioned by defects in highways, the law is settled that the plaintiff must sh[o]w that the injury was not occasioned by negligence or the want of ordinary care on his own part."); *Norris v. Town of Litchfield*, 35 NH 271, 276 (1857) ("In actions of this kind it is settled that if the damage sustained has been in any degree directly caused by his own fault or negligence, the plaintiff cannot recover."); *Central R. Co. v. Moore*, 24 NJL 824, 830 (1854) ("This action is for damages sustained by the plaintiff by reason of the alleged negligence of the defendants. To maintain it, the plaintiff must show that he was in the exercise of due care on his part, and that the defendants were not in the exercise of due care on their part."); *Timmons v. Central O. R. Co.*, 6 Ohio St 105, 108 (1856) ("[W]e think [the complaint] substantially defective in this, that it discloses, on the part of the plaintiff himself, a want of ordinary care, which was the immediate cause of the injury of which he complains."); *Beatty v. Gilmore*, 16 Pa 463, 467 (1851) ("[T]o sustain [an action for negligence], there must be the concurrence of negligence, or the commission of an unlawful act on the part of the defendant, and reasonable care exercised by the plaintiff; mutual carelessness being destructive of the title to sue."); *Robinson v. Cone*, 22 Vt 213, 222 (1850) ("In order to sustain the action on the case for negligence of the defendant, it must appear that the injury did not occur from any want of ordinary care on the part of the plaintiff, either in whole, or in part. In other words, if ordinary care on the part of the plaintiff would have enabled him to escape the consequences of the defendant's negligence, he has no ground of complaint."); *Dressler v. Davis*, 7 Wis 527, 531 (1859) ("[I]t was necessary for the [plaintiff], in order to make out a *prima facie* case, in the first instance, to prove, not only that the injury in question arose from the carelessness or negligence of the [defendants], or their servant, but also that his own carelessness or negligence did not contribute to it.").

trial. This court reversed, holding that there was a jury question about whether plaintiff's injuries were a result of his own negligence. In reaching that conclusion, the court described the burden of proof in the following terms:

> "In actions for negligence, the burden of proof always rests upon the party charging it. He must prove that the accident was caused by the wrongful act, omission, or neglect of the defendant, and that the injury of which he complains was not the result of his own negligence and the want of ordinary care and caution. Although the evidence may disclose the defendant to have been guilty of negligence, it will not excuse negligence or the want of proper care and precaution on the part of the plaintiff. The law will not permit a recovery where the plaintiff, by his own negligence or carelessness, has contributed to produce the injury from which he has suffered. To entitle, then, the plaintiff to recover (conceding the negligence of the defendant in not removing the water-tank to the proper distance after widening the track) it was incumbent on him to prove, when the accident occurred, that he exercised that ordinary care which a party ought to observe under the particular circumstances in which he was placed."

*Id.* at 253-54.

By the 1880s, a number of courts began to voice objections to the notion that a plaintiff should be required to negate contributory negligence as part of his or her case. *See, e.g.*, *O'Brien v. Tatum*, 84 Ala 186 (1887); *Robinson v. Western P. R. Co.*, 48 Cal 409 (1874); *Benson v. Goodwin*, 147 Mass 237 (1888). A number of treatise writers, after noting the general rule, similarly suggested that a better one would be to regard contributory negligence as an affirmative defense. *See, e.g.*, Seymour D. Thompson, 2 *The Law of Negligence* 1175 (1880) ("Generally, contributory negligence on the part of the plaintiff will bar a recovery. It would seem, therefore, to be a matter of defence, and that it would devolve upon the defendant to prove it.").

Oregon, however, did not join that particular chorus until 1885. As Judge Matthew Deady observed in *Conroy v. Oregon Constr. Co.*, 23 F 71, 72 (D Or 1885), at that point, the state courts had become "nearly evenly divided on the question whether 'contributory negligence' is a part of the

plaintiff's case or a matter of defense." As for Oregon, Judge Deady observed, *Walsh* appeared to indicate that the state supreme court "decided that it is a part of the plaintiff's case." *Id. See also* Charles Fisk Beach, Jr., *A Treatise on the Law of Contributory Negligence* 425-26 (1885) (citing *Kahn* and *Walsh*, as well as Deady's opinion in *Conroy*, as examples of cases in which the burden is placed on the plaintiff to prove an absence of negligence).

In *Grant v. Baker*, 12 Or 329, 7 P 318 (1885), this court changed course. In that case, the plaintiff initiated an action for the wrongful death of an individual, who was killed when he fell over the edge of a poorly designed roadway. The trial court nonsuited the case on contributory negligence grounds. The Supreme Court reversed. The court began by noting that its earlier decision in *Walsh* "might justify the impression" that it is the plaintiff who bears the burden of disproving contributory negligence. *Id.* at 332. The court quickly disavowed such a rule and confined *Walsh* to its facts. The description of the burden of proof in *Walsh*, the court in *Grant* held, "was intended to apply to the state of facts mentioned, and not to lay down any general rule." *Id.* at 333. The better rule, the court concluded, has always been that "contributory negligence is a defense and must be averred as such." *Id.*

Thus, even assuming that the dissent is correct that the "restorative" quality of a remedy is controlling, under this court's case law, plaintiff in this case—who did not plead that she had exercised due care and who the jury found to have been 50 percent at fault—would have been entitled to recover nothing.[13] Under the circumstances, it

---

[13] Plaintiff and the dissent argue that, if we are to recognize the existence of contributory negligence at the time of the adoption of the constitution, we should also take into account certain doctrines that she asserts could have been advanced in response to an assertion of contributory negligence, such as the last clear chance doctrine and gross negligence. Those doctrines, however, are not applicable to this case. To begin with, plaintiff did not raise either of them before the trial court, although she had opportunity to do so. Particularly in light of the fact that each of the doctrines that she now invokes requires particular factual showings, we are disinclined to entertain any consideration of those doctrines at this stage in the proceedings. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (appellate courts must exercise "utmost caution" when addressing unpreserved arguments because, among other things, "preservation fosters full development of the record, which aids the trial court in making a decision and the appellate

is difficult to understand the dissent's complaint that the $200,000 in damages that plaintiff was awarded was not fully "restorative" of her common-law negligence claim.

The dissent nevertheless disputes what this court in *Lawson* declared to be "indisputable"; namely that, in the mid-nineteenth century, a plaintiff's contributory negligence barred recovery on a negligence claim. At the least, the dissent contends, we cannot say "with the certainty that should be required for a decision of this magnitude" what the state of the law was in 1857, because, at that time, there existed no Oregon appellate court decisions on the subject of contributory negligence. 353 Or at 403 (De Muniz, J. pro tempore, dissenting).

Of course, the dissent is correct that it is exceedingly difficult to determine the state of Oregon law over 150 years ago. Nevertheless, that is what *Smothers* requires. Indeed, the court in *Smothers* confronted the same difficulty and resolved it, as we do here, by making the best of the limited historical resources at the court's disposal.

In *Smothers*, the court addressed the question whether the common law at the time of the adoption of this state's constitution would have recognized a cause of action for negligence against an employer. The court found no case law—it bears repeating, no case law—anywhere in the nation recognizing such a cause of action at that time. 332 Or at 128-29. Undaunted, the court stated that,

---

court in reviewing it"). Indeed, gross negligence ordinarily must be pleaded as a separate claim, which plaintiff did not do in this case. *See generally Fassett v. Santiam Loggers, Inc.*, 267 Or 505, 508, 517 P2d 1059 (1973) (describing differences between claims). Our review in this case is limited to the claim that plaintiff actually asserted. *Hughes v. PeaceHealth*, 344 Or 142, 152, 178 P3d 225 (2008). As for last clear chance, there is no evidence of its widespread recognition by 1857. The origins of the doctrine are ordinarily attributed to the English case of *Davies v. Mann*, 10 M & W 546, 152 Eng Rep 588 (1842). As Professor G. Edward White has observed, however, *Davies* was not read to have adopted such a categorical exception to the rule of contributory negligence in this country until the 1880s. G. Edward White, *Tort Law in America: An Intellectual History* 45-46 (2d ed 2003). According to White, "the doctrine had not in fact originated in *Davies v. Mann*, at least as a principle of negligence law; it was the creation of later treatise writers who extracted it from the *Davies* case and others." *Id*. The first case in this country even to mention *Davies* is an 1852 Vermont case, *Trow v. Vermont C. R.R.*, 24 Vt 487 (1852). This court did not cite *Davies* until 1890, in *Moses v. S. P. R. R. Co.*, 18 Or 385, 402, 23 P 498 (1890), and did not mention "last clear chance" until 1911, in *Smith v. Southern Pacific Co.*, 58 Or 22, 36, 113 P 41 (1911).

> "[a]lthough no Oregon cases addressed the common-law rights of employees to bring such negligence actions against their employers in the years immediately surrounding the creation of the Oregon Constitution, the content of the common law in 1857 may be divined from a wide range of sources. *Cases from other jurisdictions, as well as Oregon cases decided within a relatively short period after 1857, are instructive*."

*Id.* at 129 (emphasis added). The court then referred to four cases, three from other jurisdictions and a single decision of this court, all published more than two decades after the adoption of the Oregon Constitution. The earliest of the cases was the United States Supreme Court's decision in *Hough v. Ry. Co.*, 100 US 213, 25 L Ed 612 (1879). The three other cases were *Atchison, T. & S.F.R. Co. v. Moore*, 29 Kan 632 (1883); *Wilson v. Willimantic Linen Co.*, 50 Conn 433 (1883); and *Anderson v. Bennett*, 16 Or 515, 19 P 765 (1888). Of the 1888 Oregon decision, the court in *Smothers* observed that, because "nothing in the court's opinion in that case suggested that the holding was novel or that the decision marked a departure from any previous decisions or jurisprudence on the subject," it was permissible to infer from that decision that, "in 1857, the common law of Oregon would have recognized" the claim. 332 Or at 131.

Thus, based on a handful of cases decided 20 to 30 years after the adoption of the state constitution, this court inferred the existence of the law decades earlier. The fact is that this court has never insisted on the sort of "certainty" that the dissent demands in Article I, section 10, cases. *See, e.g.*, *Lawson*, 339 Or at 261-62 (citing *Smothers* and relying on "various other sources to determine the content of the common law at the time of the drafting of the Oregon Constitution, including roughly contemporaneous cases from other jurisdictions, as well as Oregon cases decided in the decades shortly after the adoption of the constitution.").

Moreover, unlike the court in *Smothers*, we are not merely relying on four cases decided well after the adoption of this state's constitution. As we have noted, there are numerous cases from around the country dating from *before* the time of the adoption of the Oregon Constitution reflecting what scholars—both in the mid-nineteenth

century and now—agree was the widespread acceptance of the doctrine of contributory negligence as a component of a plaintiff's case at that time. It is in that context that we have examined the later Oregon case law for any suggestion that Oregon courts saw the law differently. We have found no such case law. To the contrary, the earliest Oregon cases were consistent with what we have described as the well-established rule.

The dissent rejoins that, regardless of who has the better of the argument about Oregon's legal history, *Smothers* cannot be read to "freeze in place[ ] every repealed, overruled or outmoded argument that a defendant might have relied on in 1857 to resist an injured person's claim." 353 Or at 404 (De Muniz, J. pro tempore, dissenting). *Smothers*, however, requires that the "injury" that a modern remedy must restore is "a wrong or harm for which a cause of action existed when the drafters wrote the Oregon Constitution in 1857." 332 Or at 124. As we have noted, plaintiff's injury in this case—as pleaded and determined by a jury—is not the sort for which a cause of action existed at that time. *Smothers* does not give us liberty to pick and choose which causes of action that existed in 1857 we now regard as "outmoded." It requires us to take the law as we find it as of that time. That is what we have endeavored, in good faith, to accomplish.

Finally, the dissent complains that the "substantial" remedy test that we recognize in this case is standardless and lacks a "guiding principle." 353 Or at 404-06 (De Muniz, J. pro tempore, dissenting). The dissent, of course, echoes precisely the same criticism that Justice Unis leveled in *Greist*, and that this court rejected. The fact is that not every constitutional provision can be reduced to a neat formula that avoids the necessity of applying careful judgment to the facts and circumstances of each case.

For the foregoing reasons, we conclude that the challenged $200,000 damage limitation does not leave plaintiff with a constitutionally inadequate remedy under Article I, section 10, of the Oregon Constitution.

Certified question answered.

**DE MUNIZ, J. pro tempore,** dissenting.

Faced with an Article I, section 10, Remedy Clause controversy, the majority—for the first time in this court's history—upholds a legislative limitation that prevents plaintiff from fully recovering the *economic* damages that a jury awarded to restore her constitutionally protected right.[1] The Remedy Clause guaranteed plaintiff a "remedy by due course of law" for injury to her person—a remedy that the jury, "by due course of law," determined should include the full amount of economic damages attributable to defendant.[2] Yet the majority upholds, as constitutional, a standardless and arbitrary legislative deprivation of that remedy and does so without adherence to the text and context of the Remedy Clause or this court's prior decisions.

In *Clarke v. OHSU*, 343 Or 581, 610, 175 P3d 418 (2007), this court held that the same statutory damage cap at issue in this case violated the Remedy Clause because we were unable to discern anything

> "from our state's history, or from the nature, the form, or the amount of recovery available for the preexisting common law claim, that would permit this court to conclude that the

---

[1] The Remedy Clause affords plaintiff, and every person in this state, the right to a remedy by due course of law for personal injuries. The analysis of that right set out in our cases, and discussed in this dissent, does not differentiate between economic or noneconomic damages. As a matter of both history and logic, both kinds of damages comprise the remedy that is reasonably calculated, so far as possible, to restore or repair the right that defendant injured. I draw particular attention to the effect of the majority's holding on plaintiff's right to recover her economic injuries for only one reason. Plaintiff's economic damages reflect her out-of-pocket expenses, such as for medical bills, that is the result of defendant's conduct. Assuming that causal link, the calculation of plaintiff's economic damages requires only simple arithmetic and includes no evaluation by a factfinder of plaintiff's mental or emotional injuries, such as her pain and suffering. Thus, in focusing momentarily on the topic of plaintiff's economic damages, we perhaps can see the majority's error in clearest relief. According to the majority, Article I, section 10, does not guarantee plaintiff a right to recover a remedy reflecting even the amount of plaintiff's monetary expenses, including her medical bills, directly attributable to defendant's conduct. As this dissent demonstrates, the majority's novel interpretation of Article I, section 10, departs sharply from our case law and deprives the constitutional guarantee of a remedy by due course of law of any practical meaning.

[2] This case does not call upon us to consider—and the majority has not considered—the constitutionality of the trial court's action or that of the legislature under Article I, section 17, of the Oregon Constitution. That provision prohibits interference with the jury's assessment of damages in a common-law negligence action like this one. *Lakin v. Senco Products, Inc.*, 329 Or 62, 987 P2d 463 (1999).

limited remedy for permanent and severe injury caused by medical negligence that is now available under the OTCA meets the Article I, section 10, remedy requirement."

That same reasoning applies with equal force to plaintiff's common-law claim in this case and the result should be the same; *i.e.*, as applied here, the damage cap at issue in this matter violates the Oregon Constitution's Remedy Clause. By essentially limiting our holding in *Clarke* to its facts, however, the majority sidesteps the reasoning in that case and, in doing so, significantly undermines the Remedy Clause protections that, until this day, were enjoyed by all Oregonians.

According to the majority, the court explained in *Clarke* that

"Article I, section 10, does not deprive the legislature of the authority 'to vary and modify both the form *and the measure of recovery* for an injury,' so long as the legislature leaves the plaintiff with a substantial remedy."

353 Or at 375 (quoting *Clarke*, 343 Or at 606) (emphasis supplied by the majority). What the court actually wrote in *Clarke,* however, was that

"Article I, section 10, does not eliminate the power of the legislature to vary and modify both the form and the measure of recovery for an injury, *as long as it does not leave the injured party with an 'emasculated' version of the remedy that was available at common law.*"

*Clarke*, 343 Or at 606. The majority's efforts to replace the phrase "emasculated version of the remedy" with "substantial remedy" is not an accident; it is necessary to the majority's conclusion. In *Clark*, the court referred to an "emasculated version of the remedy" advisedly because our case law had imbued the phrase with a clear meaning; *i.e.*, a remedy that was "incapable of restoring the right that has been injured." *Id*. (quoting *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 124, 23 P3d 333 (2001)). The steps that the majority has taken to now eliminate that phrase for the purpose of purging "an unfortunate, if not sexist" term from the judicial lexicon does far more than substitute a nonsexist term; it abrogates *Clarke* or, at a minimum, severely limits its holdings. Only by inserting the term

"substantial" into the court's holding in *Clarke* is the majority able to construe the Remedy Clause to permit the truncated remedy at issue here; *i.e.*, a limited cause of action and a limited scope of recovery that, applied in tandem, are incapable of restoring plaintiff's economic injuries. Nothing in our case law supports that construction; indeed, our precedents make clear that the Remedy Clause prohibits legislative limitations that are "*incapable* of restoring the right that has been injured." (Emphasis added.) Analyzing legislative limitations on remedies under that standard is quite different from analyzing—as the majority does—whether an award of damages is, in some way or another, quantitatively "substantial." Accordingly, I dissent.

Reduced to its essential elements, the majority's position appears to be that Article I, section 10, does not prohibit the legislature from enacting any limitation on civil recoveries—regardless of whether the result is capable of restoring an injured right or not—so long as the remedy that remains is "substantial." 353 Or at 375. The basis for that proposition can be summed up in three broad points drawn from the majority's opinion: (1) under this court's case law, the "constitutional adequacy of a modern remedy may be established by the fact that the modern remedy is 'substantial' and does not leave the plaintiff 'wholly without remedy.'" 353 Or at 374-75; (2) under that principle, $100,000 in economic damages—contrasted against a $382,500 jury award for the same—is, as a matter of law, a "substantial" award; and (3) plaintiff was only entitled to restoration of "an injury that would have been recognized as the basis for a cause of action in 1857" and, in 1857, plaintiff's contributory negligence would have been a complete bar to recovery. I address each of those points in turn below.

## I.   USE OF THE WORD "SUBSTANTIAL" IN OREGON'S REMEDY CLAUSE JURISPRUDENCE

With regard to statutory caps on civil damages, this court has used the word "substantial" in its analysis in only two cases: *Hale v. Port of Portland*, 308 Or 508, 783 P2d 506 (1990), and *Greist v. Phillips*, 322 Or 281, 906 P2d 789 (1995). Neither case, however, supports application of the term "substantial" to what plaintiff has been forced

to accept here: a truncated remedy that is incapable of restoring plaintiff's injured rights.

A.   *Hale v. Port of Portland*

In *Hale*—a personal injury case involving both the Port of Portland and the City of Portland—this court upheld an early version of the Oregon Tort Claims Act (OTCA) that capped tort damages in actions instigated against public bodies. In doing so, the court cited two cases—*Noonan v. City of Portland*, 161 Or 213, 88 P2d 808 (1939) and *Evanhoff v. State Industrial Accident Commission*, 78 Or 503, 154 P 106 (1915)—for the proposition that the resulting remedy must be substantial:

> "*Noonan* and *Evanhoff* held only that Article I, section 10, is not violated when the legislature alters (or even abolishes) a cause of action, so long as the party injured is not left entirely without a remedy. *Under those cases, the remedy need not be precisely of the same type or extent; it is enough that the remedy is a substantial one.*"

*Hale*, 308 Or at 523 (emphasis added). The court never explained what, exactly, constituted a substantial remedy, only that *Noonan* and *Evanhoff* required as much. Importantly, however, at the time *Hale* was decided, the OTCA did not eliminate—as it does now—the individual liability of public employees for their negligent acts. And that factor—the availability of an alternative remedy that allowed a plaintiff to fully recover damages available at common law—was a central component in both *Noonan* and *Evanhoff*.

In *Noonan*, the legislative limitation at issue was a Portland municipal ordinance that completely immunized the city from liability for personal injuries caused by defective city sidewalks. The provision, however, specifically provided that injured persons could maintain a common-law action against the individual officers and employees who were responsible for maintaining the sidewalks. From the court's perspective, the existence of that alternative remedy proved to be key. Affirming the validity of the immunity provision, the court wrote that

> "all of our decisions have recognized that a city may be given, not absolute, but conditional immunity from liability for street accidents—*conditioned upon liability reposing in someone who owed a duty to maintain them*."

*Noonan*, 161 Or at 247 (emphasis added).[3]

In *Evanhoff*, the court upheld an early iteration of Oregon's workers' compensation program. Under the program, participating workers injured on the job were, among other things, precluded from bringing negligence actions against their employers to obtain damages beyond their medical expenses. The program, however, was not compulsory; both employers and workers could elect not to participate in it and opt, instead, to pursue the remedies and defenses for work-related injuries that existed outside the workers' compensation framework. Again, the existence of an alternative remedy in the wake of a truncated one was the dispositive factor in the court's Article I, section 10 analysis. The court described it thus:

> "The state says to the employer and employé [*sic*] alike:
>
> "'We present to you a plan of accident insurance which you may accept or reject at your own pleasure. If you accept, you must be bound by its terms and limitations; if you reject it, *the courts are open to you with every constitutional remedy intact. Take your choice between our plan and such remedies as the statute gives you.*'"

*Evanhoff,* 78 Or at 517-18 (emphasis added).

Neither of those cases can be read for the proposition that a partial remedy—like the one the majority considers "substantial" here—is capable of satisfying the Remedy Clause. Rather, both cases upheld legislative provisions that had eliminated *one* potential source of recovery, while leaving another *equivalent* source intact. In that respect, *Hale* is no different from the cases it relied on: Although

---

[3] Even at that time, the basis for that holding was neither new nor novel. In *Caviness v. City of Vale*, 86 Or 554, 562-63, 169 P 95 (1917)—decided over 20 years before—the court had recognized, as well-settled, the rule that

> "before a city can exempt itself from a liability which exists both at common law and by virtue of our Constitution, *it must provide an equivalent remedy; one reasonably adequate to serve the purpose of the one taken away*."

(Emphasis added.)

the OTCA had placed a cap on the amount of civil damages available in tort from a public body, the officers, employees, and agents of those bodies remained liable for the damages caused by their negligent actions.[4] Thus, under *Hale*, requiring a "substantial" remedy for purposes of Article I, section 10, means that, when the legislature alters or abolishes a cause of action, it must provide an equivalent remedy that is as capable of restoring a plaintiff's injuries as was the original. That standard has not been met here.

## B.  *Greist v. Phillips*

*Greist* was a wrongful-death case not cognizable at common law, and this court has since disavowed the application of the Remedy Clause to the circumstances of that case.[5] However, even assuming that *Greist* retains some precedential value, the analysis in *Greist* was quite different from the analysis used by the majority in this case. In *Greist,* a jury had awarded the plaintiff $1.5 million in noneconomic damages as the representative of her deceased son's estate.

---

[4] That similarity was not lost on Justice Hans Linde who, concurring in *Hale*, wrote:

"There is nothing intrinsically absurd in the idea that although statutory and common law remedies may be changed, they must maintain some comparable degree of protection for those interests to which Article I, section 10, refers."

*Hale,* 308 Or at 529 (Linde, J., concurring). Later in his concurrence, Justice Linde observed that

"the court has allowed legislative immunization of cities from tort liability only on condition that the individuals who are personally responsible for harm qualifying as a legal injury remain liable. This is analogous to altering or limiting the scope of *respondeat superior* rather than wholly depriving a plaintiff of a remedy in due course of law for harm that no one has declared not to be a legal injury when caused by public rather than private negligence. Because this case presents no claim against individual public 'officers or employees, or agents,' ORS 30.265, I concur with the court."

*Id.* at 530 (internal citations omitted).

[5] *Greist* is no longer good law on a number of different fronts. In 1999, the court decided *Lakin v. Senco Products, Inc.*, 329 Or 62, and held that the statute at issue *Greist*—ORS 18.560—violated the Oregon Constitution's civil jury trial guarantee. In 2002, the court decided *Storm v. McClung*, 334 Or 210, 47 P3d 476 (2002), and concluded that Article I, section 10, applied only to injuries for which a cause of action existed in 1857, effectively placing the statutorily created wrongful death action at issue in *Greist* beyond the ambit of that constitutional provision. Consequently, much of *Greist* is no longer substantively applicable as a matter of Oregon law. That said, as we acknowledged in *Clarke v. OHSU*, 343 Or 581, 605, 175 P3d 418 (2007), *Greist* remains capable of providing a degree of guidance concerning the implementation of statutory damage caps, a position that this dissent reiterates today.

This court nevertheless upheld against a Remedy Clause challenge a statute that capped the plaintiff's recovery for noneconomic damages at $500,000. In doing so, the court noted that the plaintiff had not been left without a remedy: she had received $500,000 in noneconomic damages, plus a 100 percent recovery of her economic damages in the sum of $100,000—a category of damages to which no statutory limit applied. The court went on to acknowledge that, although that remedy was less than what the plaintiff would have been entitled to before the noneconomic damages cap was put in place, it was nevertheless "substantial." *See* 322 Or at 291 (citing *Hale*).

The court, however, explained exactly why that was so. It wrote:

> "The remedy for wrongful death is substantial, not only because 100 percent of economic damages plus up to $500,000 in noneconomic damages is a substantial amount, but also because the statutory wrongful death action in Oregon has had a low limit on recovery for 113 years of its 133-year history. See 322 Or at 294, 906 P2d at 796, below (discussing history of wrongful death action in Oregon). As noted there, the wrongful death claim came into existence with a limitation, and the highest previous limitation (1961-1967) was $25,000. In relation to that history, the present remedy is substantial."

*Id*. (emphasis added). Consequently, in *Greist*—like *Hale*— the metes and bounds of a "substantial" remedy were clearly defined: Where a plaintiff had no common-law remedy aside from a legislatively created statutory claim that, historically, had been accompanied by low limitations on recovery, damage caps that allowed the plaintiff full economic damages, plus up to $500,000 in noneconomic damages, provided a remedy that was "substantial."

My point is that, if the new constitutional bellwether for Remedy Clause controversies is now the presence of a "substantial" remedy, the remedy afforded plaintiff in this case falls woefully short of that mark as defined by our case law. Unlike the plaintiff in *Greist*, plaintiff in this case cannot pursue a wrongful death action for the injuries she has suffered; consequently, there is no possibility for full

recovery of her economic damages and no possibility of a $500,000 maximum in noneconomic damages. Unlike the plaintiff in *Hale*, plaintiff's recovery against the city has been statutorily capped, *and* she cannot pursue a common law claim against the negligent city employee Consequently, plaintiff is caught coming and going—squeezed from one end by a statutory damages cap that arbitrarily limits her recovery and on the other by the complete elimination of a claim that would have permitted her a full recovery. There is nothing "substantial" about that predicament. Under Oregon law, plaintiff has been left with a constitutionally inadequate remedy that is incapable of restoring her injured rights, a circumstance that no amount of linguistic fiddling on the majority's part can change or conceal.

## II.  QUANTIFYING THE "SUBSTANTIAL" REMEDY

According to the majority, quantifying an award of damages as "substantial" with any degree of precision is probably impossible. 353 Or at 374. Undeterred by its own observation, however, the majority decides that, in this case, the sum of $200,000 has, indeed, provided plaintiff with a "substantial" remedy. To reach that result, the majority seeks support by negative implication, asserting that the remedy available to plaintiff in this case is "far more substantial" than the remedies that this court previously has determined to be constitutionally inadequate. To that end, the majority compares the limited total damages that plaintiff was allowed to recover here—$200,000—with the respective remedies that this court held to be unconstitutional under the Remedy Clause in *Neher v. Chartier*, 319 Or 417, 879 P2d 156 (1994), and *Clarke v. OHSU*, 343 Or 581.

Under the majority's reading of Neher,[6]

"although the estate of the victim had not been completely deprived of a remedy by virtue of the existence of a $3,000 burial benefit under workers' compensation law, the parents of the victim had been *totally* deprived of any remedy."

---

[6] As I have already noted, this court's decision in *Storm v. McClung* clarified that the Remedy Clause applies only to common-law claims, and not to claims created by statute, like those for wrongful death. Consequently, *Neher* is, like *Greist*, of little substantive value beyond the guidance we are able to draw from it here as we did in *Clarke*.

353 Or at 375 (emphasis in original). In its reading of *Clarke*, the majority posits that, because

> "the statutory limitation of $200,000 deprived the plaintiffs of all but one percent of the more than $17 million in damages that they would have otherwise recovered, the limitation left them with a constitutionally inadequate remedy."

*Id*. Those observations lead the majority to tacitly conclude that, because plaintiff in this matter has (1) not been totally deprived of a remedy, as was the case in *Neher*, and (2) recovered more than the "paltry fraction" at issue in *Clarke*, the $200,000 cap on her recoverable damages does not offend the Oregon Constitution.

As a matter of both logic and law, however, the majority's position fails. First, the conclusion that the limited remedies at issue in *Neher* and *Clarke* were *unconstitutional* does not make the remedy at issue in this case *constitutional*.[7] Second, neither *Neher* nor *Clarke* were cases in which the court sought to quantify a damage award as constitutionally "substantial." Instead, both cases presented the court with the same two problematic points: The law had recognized a right of recovery for the injuries of each respective plaintiff and, at the same time, abolished remedies that would have facilitated that recovery.

In *Neher*, this court invalidated statutory provisions that had immunized public bodies and their employees from the statutory wrongful death claims of persons covered by the workers' compensation statutes. The court did so reasoning that the statutes in question had left the parents—and sole heirs—of 25-year-old Julie Neher without *any legal remedy at all* after their daughter was negligently struck and killed by a Tri-Met bus. To that end, the court wrote:

> "ORS 30.010 recognizes the existence of a right of recovery for surviving parents for damages to compensate them 'for pecuniary loss and for loss of the society, companionship and services of the decedent.' ORS 30.265(3)(a), however, *operates to abolish the parents' remedy under circumstances such as those present in this case, not only*

[7] Known generally as "denying the antecedent," that error in thinking is usually illustrated by this example: *If P, then Q. Not P. Therefore, not Q*.

*against the municipality, but against the municipality's negligent employees.* Such a result is irreconcilable with this court's holdings[.]"

*Neher*, 319 Or at 428 (emphasis added; internal citations omitted).

In *Clarke*, this court held that an OTCA damages limitation violated the Remedy Clause. The plaintiff had instigated a medical negligence action against Oregon Health Sciences University and a number of individual physicians that it employed. The plaintiff brought that action on behalf of her son who had suffered total and permanent disability as the result of the negligent treatment he had received while in the hospital's care. The child's economic damages alone exceeded $12 million, a sum that was undisputed by OHSU, as was its negligence in the matter. At the time, however, the OTCA immunized the individual doctors from liability and capped the damages recoverable from OHSU at $200,000. This court held that the elimination of the plaintiff's claim against the hospital's doctors and the substituted and limited remedy against the hospital violated the Remedy Clause as an "emasculated version of the remedy that was available at common law." *Clarke*, 343 Or at 610. In reaching that conclusion, the court emphasized that the legislature had eliminated the plaintiff's "preexisting right to obtain a full recovery" for the injuries sustained by her son. The court wrote:

> "We view plaintiff's economic damages of over $12 million as *representative* of the enormous cost of life-time medical care currently associated with permanent and severe personal injuries caused by the medical negligence of a state officer, agent, or employee. Defendants do not argue that those damages do not constitute an 'injury' within the meaning of the constitution. Nor does anything in the legislation suggest such a conclusion by the legislature. Yet, the legislature has *completely eliminated an injured person's preexisting right to obtain a full recovery for those damages from the individual tortfeasors* who negligently caused the injuries."

*Id.* at 609 (emphasis added).

In short, the court's decisions in *Neher* and *Clarke* both turned on the lack of a restorative remedy. And those

two cases do not exist in a vacuum. This court has frequently referred to that restorative quality as the benchmark of a remedy's constitutionality. *See Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 124, 23 P3d 333 (2001) (noting that the term "remedy" refers, in part, to that which is "required to restore a right that has been injured"); *Davidson v. Rogers*, 281 Or 219, 222, 574 P2d 624 (1978) (noting that, in an action for libel, the remedy of a retraction did not offend the Remedy Clause because "retraction can come nearer to restoring an injured reputation than can money"); *Holden v. Pioneer Broadcasting Co.*, 228 Or 405, 419, 365 P2d 845 (1961) (noting that the "remedy afforded through retraction would seem to come closer to providing an effective means of repairing the harm" resulting from act of defamation).

The majority's contrary application of *Neher* and *Clarke* scrubs the restorative purpose of the Remedy Clause from this court's jurisprudence. Moreover, it suggests that any recovery for damages is "substantial" so long as the amount awarded falls somewhere between the sum of zero and a figure that, while not "enough," is, in the court's estimation, nevertheless "substantial," whatever that means. Untethered to a restorative purpose, that standard is both arbitrary and unworkable.

The majority, however, does not rely solely on its conclusion that the award in this case was "substantial" to justify its decision here. It goes on to opine that the remedy provided in this case also constitutes a "*quid pro quo*" because, with regard to the police officer who struck plaintiff,

> "the city remains liable for the torts of its employees committed within the scope of employment. Thus, *while the legislature limited the amount that may be recovered from individual defendants who are municipal employees*, it substituted the 'deep pocket' of the municipality itself as the ultimate payor. Plaintiffs, in other words, have been conferred a substantial benefit in exchange for the damage limitation."

353 Or at 376 (emphasis added).

Let me be absolutely clear: the legislature did not "limit" the amount that could be recovered from Officer

Boyle when it amended the OTCA in 1991; it *abolished any* option for plaintiff to recover *any* amount from Officer Boyle, by immunizing him from tort liability for negligent acts occurring in the course of his employment. And in 1991, the legislature did not confer any additional benefit to compensate for that deprivation. The legislature previously had granted a class of plaintiffs access to the "deep pockets" of the municipality for torts arising out of governmental functions, but that benefit had already served as a "*quid pro quo*" for the cap on tort damages arising out of muncipalities' proprietary functions. Having been "spent" for that purpose, municipal "deep pockets" could not then serve as a benefit for a subsequent deprivation—elimination of employee liability. Further, the "deep pockets" of the municipality supposedly substituted in Officer Boyle's stead are only as deep as the statutory damages cap, which, in this case, is not very deep at all. Consequently, there is no "this for that" exchange in evidence here. Plaintiff's common-law remedy against Officer Boyle has been abolished, and the remedy that has been left to her is insufficient to restore her injured rights as determined by the jury. She has not, contrary to the position taken by the majority, "been conferred a substantial benefit in exchange for the damage limitation." In positing otherwise, the majority is simply wrong.

In any event, the majority takes *Hale*'s "*quid pro quo*" rationale far beyond its application in that case. In *Hale,* the court did not hold that the legislative damage limitation at issue before it was constitutional based on a determination that the remedy was "substantial." Instead, the court reasoned, in part, that the legislature had conferred a benefit to a "class of plaintiffs" to which the plaintiff belonged in exchange for imposing a "counterbalancing burden." In that trade-off, the court noted, the legislature had capped previously unlimited municipal liability for torts arising out of *proprietary* functions in exchange for partially waiving what had been complete municipal immunity for torts arising out of *governmental* functions. That legislative scheme, the court wrote "may work to the disadvantage of some, while it will work to the advantage of others. But all who had a remedy continue to have one." 308 Or at 523. That legislative scheme did not prevent *any* plaintiff from

seeking damages from the individual municipal employees who caused their injuries.

The majority, however, assumes that, if the legislature has provided any sort of remedy with regard to municipal torts, that fact makes subsequent legislative limitations constitutional, even when the substituted remedy prevents a plaintiff from obtaining a full recovery from anyone. In that regard, the majority's position begs the question of what constitutes a constitutionally adequate remedy. Must the *quid pro quo fairly* trade "counterbalancing" benefits for burdens, or can the legislature satisfy the constitution by providing any benefit at all? If a balanced trade between burdens and benefits is required, then a *quid pro quo* results only when a plaintiff receives a remedy that is substantially equivalent to the one that has been taken away—and which would, presumably, be capable of restoring the right that was injured. If, however, a *quid pro quo* need not be substantially equivalent to the remedy taken away, then what relationship, if any, must it bear to the common-law remedy? If the Remedy Clause requires only a "substantial" remedy, then presumably a "substantial" *quid pro quo*—whatever that is—is all that is required. But if the Remedy Clause requires a restorative remedy, then a *quid pro quo* will be satisfactory only to the extent that the benefit it confers is restorative as well. I fail to see the utility of that tautological digression.

But, as I have already noted, there is no *quid pro quo* at play here. For torts arising out of governmental functions, plaintiffs had access to municipal "deep pockets" by virtue of the preexisting statutory waiver of municipal immunity. The 1991 OTCA amendments eliminated individual municipal employee liability without conferring any *additional* benefit to injured plaintiffs. The majority ignores that fact in favor of permitting the preexisting statutory waiver of municipal immunity to serve as a *quid pro quo* for the later, additional deprivation of individual municipal employee liability. According to the majority's interpretation of *Hale*, however, that benefit has already been "spent" to justify the cap on municipal liability for proprietary functions. If that supposed "benefit" is also

the acceptable trade-off for the remedy plaintiff has been deprived of in this case, then that "benefit" is capable of justifying *virtually any future reduction* in the remedies available to plaintiffs injured by the acts of a public body. That, in my view, is not an equitable exchange.

## III.   HISTORY AND THE LEGISLATURE'S AUTHORITY UNDER OREGON'S REMEDY CLAUSE

The majority acknowledges that the Remedy Clause requires the restoration of a right that has been injured, and asserts that what must be "restored" is an "injury that would have been recognized as the basis for a cause of action *in 1857.*" 353 Or at 381 (emphasis in original). The majority then relies on a historical analysis of the contributory negligence doctrine as practiced in the nineteenth century for its conclusion that, even if I am correct that the Remedy Clause mandates a restorative remedy, this plaintiff "would have been entitled to recover nothing" in 1857. 353 Or at 385. The majority's position is that, from a historical perspective, (1) contributory negligence was, at one time, an absolute bar to a plaintiff's recovery in tort, and (2) establishing the absence of contributory negligence was part of a plaintiff's burden of proof. Therefore, the majority concludes that,

> "under the prevailing law at the time that the state's constitution was adopted, a plaintiff was required to prove not only that his or her injuries were caused by a defendant's negligence but also that his or her own actions did not contribute to those injuries. Contributory negligence, in other words, was a principle of causation that constituted a part of plaintiff's burden of proof."

353 Or at 382.

There are, of course, multiple pitfalls associated with the kind of historical analysis that the majority undertakes. As Justice Landau has cautioned:

> "Historical analysis, even done well, often will fail to establish with anything approximating probability what the framers of a constitutional provision intended. It may even show that there were multiple and conflicting, intentions. Judges should be prepared to accept that and not try to make history tell us more than it fairly does."

Jack L. Landau, *A Judge's Perspective on the Use and Misuse of History in State Constitutional Interpretation*, 38 Val U L Rev 451, 486-87 (2004).

That warning is appropriate here. As the majority acknowledges, when the Oregon Constitution was adopted, this court had not decided that contributory negligence was a bar to a plaintiff's claim or that a plaintiff was required to plead a lack of contributory negligence as an affirmative element of his or her cause of action. The first Oregon case to discuss those issues was decided in 1870, and by 1885 the court had made clear that it had "always understood" contributory negligence to be a defense that a defendant must plead. *Grant v. Baker*, 12 Or 329, 333 (1885); *see also Johnston v. Oregon Short Line & U.N. Ry. Co.*, 23 Or 94, 99, 31 P 283 (1892) (discussing contrary position set out in *Walsh* as a *"lapsus linguae"* (a slip or fault of the tongue)).[8] Thus, the majority cannot say, with the certainty that should be required for a decision of this magnitude, that, in 1857, plaintiff would not have had a cause of action for her injuries.

---

[8] The majority cites *Conroy v. Oregon Constr. Co.* 23 F 71, 72 (D Or 1885), and Charles Fisk Beach, Jr.'s 1885 treatise on contributory negligence in support of its claim that *Walsh* establishes that, at the time the constitution was adopted, a plaintiff needed to prove the exercise of ordinary care as part of the plaintiff's case-in-chief. The majority correctly notes that Judge Deady observed in *Conroy* that, at least in 1885, the states were "nearly evenly divided on the question whether 'contributory negligence' is a part of the plaintiff's case or a matter of defense." And with regard to Oregon, Judge Deady also observed that the *Walsh* case indicated that plaintiff had the burden to prove the plaintiff's absence of negligence. I would note, however, that in doing so Judge Deady appeared skeptical of the rule, pointing out that "[t]he law does not presume that anyone is negligent; especially when such negligence may or will result in his own personal injury**.**" 23 F at 72. Moreover, Judge Deady characterized the court's reference to the rule stated in *Walsh* as "a *dictum* to that effect." *Id.* at 72. Judge Deady's observations are consistent with Oregon statutory law at the time the constitution was adopted. At that time, with regard to civil matters, there was a presumption that, "a person takes ordinary care of his own concerns." General Laws of Oregon, Civil Code, ch VIII, title VII, § 766, p 337 (Deady 1845-1864). With regard to the Beach treatise, I would point out that in the third edition of the treatise in 1899 Beach still recognized *Walsh* as controlling almost 15 years after that was clearly no longer the case. *See* Charles Fisk Beach, Jr., *A Treatise on the Law of Contributory Negligence* § 422, 599-601 (3rd ed 1899) (listing Oregon as one of the states requiring a plaintiff to prove the absence of his own negligence). All I claim for these notations is to emphasize that determining the *exact* state of Oregon law over 150 years ago is an exceeding difficult undertaking.

Furthermore, even if defendant could have made arguments in 1857 that had the potential to defeat plaintiff's claim had she filed it in 1857 rather than in 2007, plaintiff also could have raised legal rules, such as last clear chance or that defendant had acted with gross negligence—rules that could have defeated defendant's contributory negligence arguments. The majority declines to address the theoretical or practical significance of those rules because, according to the majority, plaintiff failed to preserve below arguments regarding those rules. That is true, but it is unsurprising: As noted, contributory negligence ceased to be a part of Oregon law decades ago and plaintiff therefore had no obligation to plead claims in reply to that nonexistent doctrine. It is fundamentally unfair for the majority to consider how plaintiff's claim theoretically would have fared in 1857 based only on arguments that a defendant could have made and at the time refuse to consider, on preservation grounds, the counter arguments that a plaintiff could have made.

In any event, regardless of who has the better argument about Oregon's legal history, because the Oregon legislature abolished the contributory negligence doctrine decades ago, it was not part of the "due course of law" that governed plaintiff's right to a remedy at the time of *her* injury. Relying on *Smothers*, however, the majority, nevertheless insists that the legislature constitutionally may deprive a plaintiff of a remedy that otherwise would be guaranteed to her if a court is able to determine that the plaintiff's negligence contributed to her injury. *Smothers* does not stand for such a strained proposition. Article I, section 10, guarantees a restorative remedy for *injury* done to one's person; it does not mention, let alone freeze in place, every repealed, overruled or outmoded argument that a defendant might have relied on in 1857 to resist an injured person's claim.

Finally, I take issue with the majority's resolution of this matter for its lack of any guiding principle capable of aiding both bench and bar in future Remedy Clause cases. Will the requirement that a remedy be "substantial" and

that it provide a "*quid pro quo*," prohibit the legislature from limiting all plaintiffs to a recovery of $200,000 regardless of injury? What about $20,000? $2,000?[9] Will a limitation to

---

[9] Since this court's decision in *Clarke* and the trial court decision in this case, the legislature has increased the damages caps. The majority gives the legislature no guidance for the future about whether its damage caps will meet constitutional muster in individual cases. As pertinent here for claims against public bodies, ORS 30.272 now provides:

"(1) The limitations imposed by this section apply to claims that:

"(a) Are subject to ORS 30.260 to 30.300;

"(b) Are made against a local public body, or against an officer, employee or agent of a local public body acting within the person's scope of employment or duties;

"(c) Arise out of a single accident or occurrence; and

"(d) Are not claims for damage to or destruction of property.

"(2) The liability of a local public body, and the liability of the public body's officers, employees and agents acting within the scope of their employment or duties, to any single claimant for claims described in subsection (1) of this section may not exceed:

"(a) $500,000, for causes of action arising on or after July 1, 2009, and before July 1, 2010.

"(b) $533,300, for causes of action arising on or after July 1, 2010, and before July 1, 2011.

"(c) $566,700, for causes of action arising on or after July 1, 2011, and before July 1, 2012.

"(d) $600,000, for causes of action arising on or after July 1, 2012, and before July 1, 2013.

"(e) $633,300, for causes of action arising on or after July 1, 2013, and before July 1, 2014.

"(f) $666,700, for causes of action arising on or after July 1, 2014, and before July 1, 2015.

"(g) The adjusted limitation provided by subsection (4) of this section, for causes of action arising on or after July 1, 2015.

"(3) The liability of a local public body, and the liability of the public body's officers, employees and agents acting within the scope of their employment or duties, to all claimants for claims described in subsection (1) of this section may not exceed:

"(a) $1 million, for causes of action arising on or after July 1, 2009, and before July 1, 2010.

"(b) $1,066,700, for causes of action arising on or after July 1, 2010, and before July 1, 2011.

"(c) $1,133,300, for causes of action arising on or after July 1, 2011, and before July 1, 2012.

"(d) $1,200,000, for causes of action arising on or after July 1, 2012, and before July 1, 2013.

"(e) $1,266,700, for causes of action arising on or after July 1, 2013, and before July 1, 2014.

25 percent of the damages awarded by a jury be deemed constitutionally sound? Ten percent? Five percent? The majority does not say, and the lack of analytical rigor in its discussion does not help answer the question. The only limitations suggested by the majority's opinion are that (1) plaintiffs cannot be left "wholly without a remedy," or without recourse of any value whatsoever, and—in what is essentially the same proposition stated differently—that (2) some benefit must be conferred as a "*quid pro quo*" in exchange for the remedy taken away, regardless of the quantity, quality, or substance of the new benefit conferred. Those propositions, however, are as applicable to a remedy of $10 as they are to a remedy of $10,000,000 and will ultimately prove unhelpful in future cases.

In my view, there are no plausible arguments for holding that the Remedy Clause can be satisfied by a remedy that is not capable of restoring a plaintiff's injured rights and, even if there were, there are no principled bases upon which a court could find the remedy in this case to be "substantial"—unless, of course, every remedy short of no remedy at all is, indeed, "substantial." Here, because the constitution plainly requires that plaintiff have a fully

"(f) $1,333,300, for causes of action arising on or after July 1, 2014, and before July 1, 2015.

"(g) The adjusted limitation provided by subsection (4) of this section, for causes of action arising on or after July 1, 2015.

"(4) Beginning in 2015, and every year thereafter, the State Court Administrator shall determine the percentage increase or decrease in the cost of living for the previous calendar year, based on changes in the Portland-Salem, OR-WA Consumer Price Index for All Urban Consumers for All Items as published by the Bureau of Labor Statistics of the United States Department of Labor. On or before July 1 of the year in which the State Court Administrator makes the determination required by this subsection, the State Court Administrator shall adjust the limitations imposed under subsections (2) and (3) of this section for the following calendar year by multiplying the limitation amounts applicable to the calendar year in which the adjustment is made by the percentage amount determined under this subsection. The adjustment may not exceed three percent for any year. The State Court Administrator shall round the adjusted limitation amount to the nearest $100, but the unrounded amount shall be used to calculate the adjustments to the limitations in subsequent calendar years. The adjusted limitation becomes effective on July 1 of the year in which the adjustment is made, and applies to all causes of action arising on or after July 1 of that year and before July 1 of the subsequent year.

"(5) The limitations imposed by this section do not apply to claims against Oregon Health and Science University."

restorative remedy and because the legislative limitation on that remedy is so patently insufficient to serve that purpose, I cannot join the majority in upholding its constitutionality.

I respectfully dissent.

Walters, J., and Durham, Justice, pro tempore, join in this dissent.

**DURHAM, J. pro tempore,** dissenting.

I join fully the dissenting opinion of Justice De Muniz in this proceeding. I write separately to draw attention to an issue concerning Article I, section 10, of the Oregon Constitution that likely will come before this court in the future.

The key facts are that the jury in this case found that plaintiff and defendant Boyle were each 50 percent at fault for the personal injuries that plaintiff suffered. The trial court accepted the jury's finding that plaintiff had suffered economic damages in the sum of $765,000 and noneconomic damages in the sum of $250,000. The court reduced those sums by 50 percent to account for plaintiff's comparative negligence and entered a judgment against defendants for $382,500 in economic damages and $125,000 in noneconomic damages, for a total judgment for plaintiff in the sum of $507,500. Finally, the trial court rejected defendants' motion to reduce further plaintiff's total damages to $200,000, in accordance with ORS 31.270(1)(b) (2007). According to the trial court, that further reduction would deprive plaintiff of her constitutionally guaranteed "remedy by due course of law for injury done [her] in [her] person," as provided in Article I, section 10.

The majority today rejects that ruling. It concludes that Article I, section 10, does not prevent the legislature from imposing a "cap" of $200,000 on the jury's decision that plaintiff suffered damages (adjusted for her comparative negligence) in the sum of $507,000. According to the majority, Article I, section 10, entitles plaintiff not to the damages that actually would restore and, thus, remedy her personal injury, but only to whatever lesser sum that the legislature may designate if the court can say that that

sum is a "substantial" remedy. *Howell v. Boyle*, 353 Or at 359 (majority concludes that state constitution requires any limited remedy to be "substantial," and the capped judgment that plaintiff received "satisfies that constitutional requirement").

The majority opinion demonstrates just how far the majority has strayed from the remedy guarantee that Article I, section 10, embodies. The text of that provision guarantees a "remedy by due course of law;" the adjective "substantial" does not appear in any form in the constitution.

As Justice De Muniz capably demonstrates in his dissent, the adjective "substantial" is unworkable as a legal standard because it is ambiguous and amorphous in the extreme. It is telling that the majority does not attempt to define or explain the meaning or limits of that term in this context; that would be a fool's errand. Like the meaning of "beauty," the meaning of "substantial" in this context exists only in the eye of the beholder.

How did the court's interpretive focus shift from the constitutional text (particularly the term "remedy") to the adjective "substantial"? The answer appears in *Hale v. Port of Portland*, 308 Or 508, 783 P2d 506 (1989). That case reviewed (somewhat inaccurately, as Justice Linde correctly noted in his concurring opinion) earlier cases that discussed the legislature's authority to alter statutory and common law claims and remedies as long as the constitutionally significant underlying interests in person, property, and reputation are protected. The *Hale* court then stated:

> "Under those cases, the remedy need not be precisely of the same type or extent; it is enough that the remedy is a substantial one."

*Id.* at 523.

It is that sentence that has pulled the majority away from the constitutional text of Article I, section 10. That sentence does not purport to construe any constitutional term. But the majority now uses the adjective "substantial" to conclude that the guarantee of a remedy for the injury to plaintiff's person is satisfied by a cropped sum of money that, in legal terms, does not restore or repair (and thus does not

remedy) the injury inflicted by defendant upon to plaintiff's body and pocketbook. Instead of focusing on the real issue—whether plaintiff has received her guaranteed remedy by due course of law—the majority addresses whether the capped judgment awards a "substantial" amount. I submit that there will never be a satisfactory answer to that issue because it asks the wrong question. Apparently, the majority has now condemned this court to repeat, over and over, that same fruitless quarrel over how to apply a standard based on a mere adjective used in one unexplained sentence in *Hale*.

I conclude by inviting this court to reassess its approach to the remedy guarantee by returning to the words of the constitution itself and the interests of the people described therein. Those who drafted the remedy guarantee did not wish to tie the legislature's hands in abolishing older forms of action and remedy so long as the people's interests in person, property, and reputation remain protected through remedies provided by due course of law, including the constitutional right to trial by jury. They did not conceive, I submit, of a remedial scheme that would allow the legislature to cut personal injury damages by more than half, as here, with no hint of an adequate or alternative remedy to make up for that cut. That approach grants an unjustified windfall to the wrongdoer here and defeats the principle of responsibility for injury caused to others that Article I, section 10, embodies. Only in the topsy-turvy world occupied by the majority does a capped award of $200,000 constitute a remedy for the $507,000 injury that plaintiff suffered as a result of defendants' tortious conduct here.

Counsel who wish to invite the court to engage in that reassessment of Article I, section 10, should preserve that argument at the appropriate stage and advance the arguments, suggested in this court's case law, that justify a reconsideration of today's unfortunate decision.

I respectfully dissent.